**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**S & A RETAIL, INC.,**[1]<br><br>Debtor. | Chapter 11<br>(Subchapter V)<br><br>Case No. 21-22174 (RDD) |
| In re:<br><br>**S & A DISTRIBUTION, INC.,**[2]<br><br>Debtor. | Chapter 11<br>(Subchapter V)<br><br>Case No. 21-22175 (RDD) |

**DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION UNDER**
**SUBCHAPTER V OF TITLE 11, UNITED STATES CODE**

Joseph T. Moldovan
David J. Kozlowski
Morrison Cohen LLP
909 Third Avenue
New York, NY 10022
T: 212-735-8600
F: 212-735-8708

Dated: June 24, 2021

---

[1] Tax ID No. last four digits: 1261; mailing address: 334 S Buckhout St., Irvington, NY 10533.
[2] Tax ID No. last four digits: 5366; mailing address: 334 S Buckhout St., Irvington, NY 10533.

## TABLE OF CONTENTS

STATEMENT ABOUT THIS JOINT PLAN OF REORGANIZATION ...................................... 1

DEFINITIONS ................................................................................................................................. 1

RULES OF INTERPRETATION AND CONSTRUCTION ........................................................ 9

INTRODUCTION ......................................................................................................................... 11

I. THE PLAN CONFIRMATION HEARING ............................................................................ 11
    A.   Description and History of the Debtors' Businesses ...................................................... 12
    B.   The Debtors' Business Model .......................................................................................... 12
    C.   Prepetition Debt Structure ................................................................................................ 13
    D.   Events Leading to the Commencement of the Chapter 11 Cases.................................... 14

II. EVENTS DURING THE CHAPTER 11 CASES ................................................................... 15
    A.   Commencement of the Cases ............................................................................................ 15
    B.   The "First Day Pleadings".................................................................................................. 15
    C.   Employment of Professionals............................................................................................ 16
    D.   Schedules of Assets and Liabilities and Statement of Financial Affairs........................ 16
    E.   Bar Date Order .................................................................................................................. 16
    F.   The Debtors' Leases.......................................................................................................... 16
    G.   Administrative Reporting and Obligations...................................................................... 17

III. THE CHAPTER 11 PLAN PROCESS AND CONFIRMATION  REQUIREMENTS IN A
SUBCHAPTER V CASE ............................................................................................................. 17
    A.   Liquidation Analysis ........................................................................................................ 18
    B.   The Plan Satisfies the "Best Interest of Creditors Test" and is "Fair and Equitable" ..... 18
    C.   The Plan is Feasible and the Debtors Will be Able to Make All Distributions Under the
    Plan  20

IV. TREATMENT OF UNCLASSIFIED CLAIMS ................................................................... 20
    A.   Administrative Claims...................................................................................................... 20
    B.   Bar Date for Administrative Claims................................................................................. 21
    C.   Professional Fee Claims ................................................................................................... 21
    D.   Priority Tax Claims .......................................................................................................... 21

V. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS. 22
    A.   Classification and Treatment Generally .......................................................................... 22
    B.   Classification and Treatment of Classified Claims and Interests................................... 22

VI. ACCEPTANCE OR REJECTION OF THE PLAN .............................................................. 23

VII. MEANS OF IMPLEMENTATION ..................................................................................... 24
    A.   Plan Funding...................................................................................................................... 24
    B.   Continued Reorganized Operations.................................................................................. 24

    C.    Corporate Governance ........................................................................................ 24
    D.    Section 1145 Exemption ..................................................................................... 24

VIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................................... 24
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases .................. 24
    B.    Bar Date for Rejection Damages ......................................................................... 25
    C.    Rejection Damages Proofs of Claims .................................................................. 25
    D.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ................. 25
    E.    Insurance Policies ............................................................................................. 26
    F.    Modifications, Amendments, Supplements, Restatements, or Other Agreements ........ 26
    G.    Contracts and Leases Entered Into After the Petition Date ..................................... 26
    H.    General Reservation of Rights ............................................................................ 26

IX. DISTRIBUTIONS ............................................................................................... 27
    A.    Reorganized Debtors to Make Distributions ........................................................ 27
    B.    Method of Payment; Payments, Filings, and Notices Only on Business Days ............. 27
    C.    Undeliverable or Unclaimed Distributions ........................................................... 27
    D.    Fractional Dollars, De Minimis Distributions ...................................................... 27
    E.    Time Bar to Cash Payments ............................................................................... 27
    F.    Setoff and Recoupment ..................................................................................... 28
    G.    No Interest. No interest shall accrue or be paid on any Claim. .................................. 28
    H.    Disputed Claims ............................................................................................... 28
    I.    Withholding Taxes ........................................................................................... 28

X. ALLOWANCE OF CLAIMS AND INTERESTS ......................................................... 28
    A.    Disallowance of Claims ..................................................................................... 28
    B.    No Distribution Pending Allowance .................................................................... 28
    C.    Allowance of Claims ......................................................................................... 29
    D.    Late Claims ...................................................................................................... 29
    E.    Estimation of Claims ........................................................................................ 29
    F.    Cumulative Remedies ....................................................................................... 29

XI. EFFECT OF THE PLAN ON CLAIMS, INTERESTS, AND RIGHTS OF ACTION ......... 29
    A.    Binding Effect .................................................................................................. 29
    B.    Vesting of Assets .............................................................................................. 29
    C.    Authority to Effectuate Plan ............................................................................... 30
    D.    Discharge ......................................................................................................... 30

XII. EXCULPATION, INJUNCTION, RELEASES, AND RELATED PROVISIONS ............. 30
    A.    Exculpation ...................................................................................................... 30
    B.    Releases by the Debtors ..................................................................................... 30
    C.    RELEASES BY HOLDERS OF CLAIMS, THIRD PARTY RELEASE ..................... 31
    D.    INJUNCTION. ................................................................................................. 32
    E.    Preservation and Application of Insurance ........................................................... 33
    F.    Retention, Reservation, and Prosecution of Rights of Action .................................. 33

XIII. CONDITIONS TO OCCURRENCE OF EFFECTIVE DATE ..................................... 33

#10423533 v3 \018600 \0037

    A.   Conditions to Effectiveness ................................................................ 33
    B.   Waiver of Conditions ......................................................................... 34
    C.   Effect of Non-Occurrence of the Effective Date ............................... 34

XIV. RETENTION OF JURISDICTION ........................................................ 34

XV. MISCELLANEOUS ................................................................................. 36
    A.   Effecting Documents; Further Transactions; Timing ....................... 36
    B.   Governing Law ................................................................................... 36
    C.   Continuing Viability of Other Orders or Agreements ....................... 36
    D.   Exemption from Transfer Taxes ........................................................ 36
    E.   Post-Effective Date Fees; Final Decree ............................................ 36
    F.   Modification and Amendments .......................................................... 37
    G.   Revocation, Withdrawal, or Non-Consummation ............................. 37
    H.   Exhibits and Schedules ...................................................................... 37
    I.   Substantial Consummation ................................................................ 37
    J.   Notices ................................................................................................ 37
    K.   Entire Agreement .............................................................................. 38
    L.   Severability ........................................................................................ 38
    M.   Conflicts ............................................................................................. 38

EXHIBIT 1    DEBTOR RETAIL LIQUIDATION ANALYSIS
EXHIBIT 2    DEBTOR DISTRIBUTION LIQUIDATION ANALYSIS
EXHIBIT 3    DEBTOR RETAIL DISPOSABLE INCOME ANALYSIS
EXHIBIT 4    DEBTOR DISTRIBUTION DISPOSABLE INCOME ANALYSIS
EXHIBIT 5    PLAN SUPPORT AGREEMENT

## STATEMENT ABOUT THIS JOINT PLAN OF REORGANIZATION[3]

This document is a joint Plan of Reorganization for Debtors S & A Retail, Inc. and S & A Distribution, Inc. This means that this single document will provide an explanation for how each creditor of each separate Debtor will be treated and receive a Distribution on account of each creditor's Claim or Claims against the applicable Debtor. S & A Retail and S & A Distribution are "affiliates" as that term is defined under the Bankruptcy Code, because S & A Distribution is the parent of S & A Retail, and both companies serve different functions as part of an integrated business enterprise. By Court order, these Cases have been jointly administered and are procedurally consolidated for the convenience of the Debtors, their Estates, and the Court. Consequently, the Court maintains one file and one Docket for the both Chapter 11 Cases under the case of S & A Retail, Inc. (Case No. 21-22174), and these Chapter 11 Cases are administered under the S & A Retail, Inc. caption.

Joint administration does not adversely affect the Debtors' respective constituencies because the Joint Administration Order [Dkt. No. 23] administratively, but not substantively, consolidates the Debtors' Estates. This means that the claims against, and assets of, each Debtor are being separately treated and administered under this Plan. When used throughout this Plan, the term "Debtor" shall mean S & A Retail, Inc. or S & A Distribution, Inc. as applicable and as will be clear in this Plan from the context. Similarly the term "the Debtor" means the Debtor in its separate Bankruptcy Case. Also, for the sake of convenience Debtor S & A Retail, Inc. is referred to a "Debtor Retail" and Debtor S & A Distribution, Inc." is referred to as "Debtor Distribution." References to the "Debtors" means both S & A Retail, Inc. and S & A Distribution, Inc.

## DEFINITIONS

The following terms have the respective meanings specified below, except as expressly provided in other sections of the Plan, unless the context otherwise requires (such meanings to be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined). Any capitalized term used in the Plan but not defined herein that is used in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.

**34th Street:** Debtor Retail's former retail location on 34th Street in New York City.

**Administrative Claim**: A Claim for any expense Allowed under Bankruptcy Code §§ 503(b), 507(b), or 546(c)(2) and entitled to priority under Bankruptcy Code § 507(a)(2), including: (a) actual and necessary costs and expenses incurred in the ordinary course of the Debtors' business; (b) actual and necessary costs and expenses of preserving the Estates or administering the Chapter 11 Cases; and (c) all Professional Fee Claims to the extent Allowed by Final Order under Bankruptcy Code §§ 330, 331, or 503.

**Administrative Claims Bar Date**: For all Administrative Claims except Professional Fee Claims, the first business day that is 15 days following the Effective Date, unless the Bankruptcy Court has entered an order setting an earlier Administrative Claims Bar Date.

---

[3] All capitalized terms used in this document and any attachments to this document, not otherwise defined in the text of this document or any attachments to this document, are defined in the "Definitions" section below.

**ADP**: ADP TotalSource, the Debtors' professional employer organization utilized by the Debtors that employs all of the Debtors' employees.

**Allowed**: Means, with respect to any Claim against, or Interest in, either Debtor, (a) any Claim against, or Interest in, either Debtor that has been listed by the Debtor in its Schedules (as such Schedules may be amended from time-to-time in accordance with Bankruptcy Rule 1009) as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim or Interest has been filed or no timely objection to allowance or request for estimation has been interposed, (b) any timely filed proof of Claim or proof of Interest as to which no objection has been or is interposed in accordance with the Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder of such Claim, (c) any Claim or Interest expressly allowed by a Final Order or under the Plan ("Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Claim from and after the Petition Date), (d) any Claim or Interest or any portion thereof that either Debtor has assented to the validity of or that has been expressly allowed under the Plan or (e) that is agreed to by either Debtor or Reorganized Debtor and the holder of such Claim or Interest.

**Allowed […] Claim**: An Allowed Claim in the particular Class or category specified.

**Aventura**: Debtor Retail's retail lease location in the Aventura Mall in Miami, Florida.

**Ballot**: The ballot upon which a Holder of an Impaired Claim or Interest entitled to vote on the Plan shall, among other things, indicate its acceptance or rejection of the Plan in accordance with the procedures herein and in the Plan Scheduling Order.

**Bankruptcy Code**: Title 11 of the United States Code as of the Petition Date.

**Bankruptcy Court**: The United States Bankruptcy Court for the Southern District of New York, which has jurisdiction over the Cases or in the event such court ceases to exercise jurisdiction over the Cases, any other court or adjunct thereof that exercises jurisdiction over the Cases.

**Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Cases or proceedings therein.

**Bar Date**: May 31, 2021, the date fixed by order of the Bankruptcy Court as the date by which all proofs of claim with the exception of those asserted by governmental entities (as defined in the Bankruptcy Code) were required to be filed against the Debtors. For the avoidance of doubt, the Bar Date is not inclusive of the Rejection Claim Bar Date.

**Business Day**: Any day, excluding Saturdays, Sundays, and "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in New York City.

**Case or Cases**: The Chapter 11 case of S & A Retail or the Chapter 11 case of S & A Distribution, or both of these cases, as is evident from the context of the sentence.

**Cash**: Currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, and wire transfers of immediately-available funds.

**Chapter 11 Case or Cases**: The case under chapter 11 of the Bankruptcy Code for the Debtor pending before the Bankruptcy Court under Case No. 21-22174 (RDD), for S & A Retail, Inc. or Case No. 21-22175 (RDD), for S & A Distribution, Inc., or both of these cases.

**Claim**: A claim against either Debtor or its property as defined in Bankruptcy Code § 101(5).

**Claimant**: An entity that holds a Claim against either Debtor that arose at the time of or before the Petition Date, or an entity that has a Claim against the Estate of a kind specified in Bankruptcy Code §§ 348(d), 502(f), 502(g), 502(h), or 502(i).

**Claim Objection Deadline**: The first Business Day that is 180 days after the Effective Date.

**Claims Reconciliation Process**: The process to reconcile all Claims asserted against the Debtors with the Debtors' books and records, including any objections to Claims filed by the Debtors, which process the Debtors commenced immediately after the Bar Date.

**Class**: A category consisting of holders of Claims or Interests substantially similar in nature to the Claims or Interests of other holders placed in that category, as designated in Article V of the Plan pursuant to Bankruptcy Code § 1122.

**Class 2 Distribution Amount**: In the event that the Plan is confirmed consensually, the Funding Commitment will be sufficient to provide a 1.25 multiple of Liquidation Value to fund Distributions to Class 2 Allowed Claims. The Plan is a "pot plan," meaning that a lump sum will be available to Holders of General Unsecured Claims, each of whom will receive a distribution of their Pro Rata Share from the "pot" that is estimated to be approximately 2%. In the event the Plan is not consensual, the Funding Commitment will be sufficient to provide a 1.10 multiple of Liquidation Value to fund Distributions to Class 2 Allowed Claims. This will result in an approximate Distribution on account of Allowed General Unsecured Claims of 1% for the reason explained above.

**Class 2A Distribution Amount**: In the event that the Plan is confirmed consensually, the Funding Commitment will be sufficient to provide a 1.25 multiple of Liquidation Value to fund Distributions to Class 2A Allowed Claims. The Plan is a "pot plan," meaning that a lump sum will be available to Holders of General Unsecured Claims, each of whom will receive a distribution of their Pro Rata Share from the "pot" that is estimated to be approximately 16%. In the event the Plan is not consensual, the Funding Commitment will be sufficient to provide a 1.10 multiple of Liquidation Value to fund Distributions to Class 2A Allowed Claims. This will result in an approximate Distribution on account of Allowed General Unsecured Claims of 14% for the reason explained above.

**Confirmation Date**: The date the Bankruptcy Court enters the Confirmation Order on its Docket, within the meaning of Bankruptcy Rules 5003 and 9021.

**Confirmation Hearing**: The hearing held by the Bankruptcy Court on [●], 2021 to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**Confirmation Order**: The order confirming the Plan in accordance with the provisions of the Bankruptcy Code.

**Counsel for the Debtors**: Joseph T. Moldovan, David J. Kozlowski, Morrison Cohen, LLP, 909 Third Avenue, New York, NY 10022, T: 212-735-8600, F: 212-735-8708, jmoldovan@morrisoncohen.com, dkozlowski@morrisoncohen.com.

**Cure**: The payment of Cash by either Debtor, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to cure monetary defaults under an Executory Contract or Unexpired Lease of the Debtor and to permit the Debtor to assume that contract or lease under § 365(a) of the Bankruptcy Code.

**Cure Schedule**: The schedule of proposed Cure amounts for (i) any Executory Contract proposed to be assumed for which either Debtor proposes a Cure amount other than $0.00 and (ii) each Unexpired Lease proposed to be assumed, as the same may be amended, modified, or supplemented from time to time.

**Debtor**: When used throughout this Plan, the term Debtor shall mean S & A Retail, Inc.—which is sometimes referred to as "**Retail**" in this Plan—or S & A Distribution, Inc.—which is sometimes referred to as "**Distribution**" in this Plan—as applicable.

**Debtors**: S & A Retail, Inc. or S & A Distribution, Inc. as applicable.

**Debtor Affiliate Agreements**: The Debtors are parties to a number of agreements between and among each other and affiliated entities that address various rights and obligations in connection with such things as product distribution, licenses, administrative, technology, or other back-office support. All Debtor Affiliate Agreements are being assumed under the Plan in accordance with Section VIII.

**Debtor-in-Possession**: Either Debtor, during the period commencing on the Petition Date and ending on the Effective Date.

**Debtors-in-Possession**: The Debtors, during the period commencing on the Petition Date and ending on the Effective Date.

**Debtors' Release**: The release provided by the Debtors to the Released Parties in Article XII of this Plan.

**Disallowed**: A Claim as to which a Final Order has been entered disallowing the Claim or a portion thereof.

**Disputed**: Means, as to any Claim (or portion thereof) or Interest against either Debtor, a Claim or Interest that is not an Allowed Claim or Interest and (a) is listed on the Schedules as disputed, unliquidated, or contingent, (b) is filed pursuant to Bankruptcy Code § 501(a) as unliquidated or contingent, or (c) as to which the Debtor or any party in interest with standing, has interposed a

#10423533 v3 \018600 \0037

timely objection or request for estimation or subordination in accordance with the Bankruptcy Code and the Bankruptcy Rules that has not been determined by Final Order.

**Distribution**: A payment to the Holder of an Allowed Claim or Interest.

**Effective Date**: The date on which this Plan shall take effect, which date shall be a Business Day on or after the Confirmation Date on which all conditions precedent to the effectiveness of this Plan specified in Article XIII, have been satisfied, or, if capable of being waived, waived, which date shall be specified in a notice filed by the Reorganized Debtors with the Bankruptcy Court.

**Estate**: The bankruptcy Estate of each Debtor created pursuant to section 541 of the Bankruptcy Code.

**Exculpated Parties**: Each of the following solely in their capacity as such: (a) the Debtors, (b) the Reorganized Debtor, (c) the Debtors' and Reorganized Debtor's directors, officers, employees, advisors, and agents, (d) the Professionals, and (e) Parent and its professionals, directors, officers, employees, advisors, and agents involved in these Chapter 11 Cases and the negotiation, implementation, and execution of the Plan and the PSA.

**Executory Contract or Unexpired Lease**: Any contract or lease to which either Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

**Final Decree**: An order entered by the Bankruptcy Court closing the Chapter 11 Cases.

**Final Order**: An order as to which the time to appeal, petition for *certiorari*, or move for re-argument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for re-argument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, move for re-argument, or rehearing shall have been waived in writing or, in the event an appeal, writ of *certiorari*, or re-argument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or *certiorari* has been denied, or from which re-argument or rehearing was sought, and the time to take any further appeal, petition for *certiorari*, or motion for re-argument or rehearing shall have expired; *provided, however*, the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

**Funding Commitment**: The amount of cash Parent has agreed to provide the Debtors under the PSA to enable the Debtors to make all distributions required under the Plan.

**Funding Commitment Agreement**: The agreement between the Debtors and Parent under which Parent will provide the Funding Commitment.

**Geox**: Geox S.p.A., an entity organized under the law of Italy.

**Geox Branded Products**: The "Geox" branded products produced, marketed, and sold by the Geox and its global subsidiaries including the Debtors.

#10423533 v3 \018600 \0037

**General Unsecured Claim**: Any Claim against the Debtor existing as of the Petition Date other than a Secured Claim, Administrative Claim, Priority Tax Claim, other Priority Claim, or the Parent's Unsecured Claims.

**Holder**: A Person holding a Claim or Interest or any authorized agent who has completed, executed, and delivered a Ballot in accordance with the applicable voting instructions.

**Impaired**: Means impaired within the meaning of section 1124 of the Bankruptcy Code.

**Insider**: Insider shall have the meaning ascribed to it in Bankruptcy Code § 101(31).

**Insurance Policy**: Any issued policy of insurance and any agreements relating thereto covering either Debtor, Debtor's Estate, or its respective assets, directors, officers, members, managers, employees and fiduciaries, or that may be available to provide coverage for Claims against either Debtor or any of the foregoing, including without limitation any general liability, property, workers compensation, casualty, umbrella or excess liability policy(ies), errors and omissions, director and officer or similar executive, fiduciary, and organization liability policy(ies) (A, B, or C coverage), and any tail with respect thereto.

**Interest**: Any equity interest in either Debtor represented by any certificated or uncertificated shares or membership interest issued to any Person before the Effective Date, and any warrants, options, or rights to purchase any equity interest.

**Interest Holder**: the Holder of an Interest.

**Joint Administration Order**: The order of the Court administratively and procedurally, but not substantively, consolidating the Debtors' Estates [Dkt. No. 23].

**Liquidation Value**: The amount realizable if each Debtor's assets were sold and liquidated under Chapter 7 of the Bankruptcy Code.

**Local Bankruptcy Rules**: The Local Bankruptcy Rules for the Southern District of New York, as may be amended from time to time, as applicable to the Chapter 11 Cases or proceedings therein.

**Non Debtor Released Parties**: The Released Parties other than the Debtors and the Debtors' Estates.

**Notice Parties**: Counsel to the Debtor, the Subchapter V Trustee, the U.S. Trustee, and all persons or parties requesting or entitled to notice under Bankruptcy Rule 2002.

**Omni**: Omni Agent Solutions, the Debtors' claims, noticing, and administrative agent.

**Parent**: Geox S.p.A., an entity organized under the law of Italy.

**Parent Claims**: The Parent Debtor Retail Affiliate Agreement Claim and the Parent Debtor Distribution Claims and any other Claims Parent may have against either Debtor that arose prior to or after the Petition Date and on or before the Effective Date.

**Parent Debtor Distribution Affiliate Agreement Claim**: The Administrative and Cure Claim of Parent arising from its provision of services to Debtor Distribution post-petition in the Allowed amount provided in the PSA.

**Parent Debtor Distribution Claims**: The Parent Debtor Distribution Unsecured Claim, the Parent Debtor Distribution 503(b)(9) Claim, and the Parent Debtor Distribution Affiliate Agreement Claim.

**Parent Debtor Distribution 503(b)(9) Claim**: The claim of Parent arising under Section 503(b)(9) of the Bankruptcy Code in the Allowed amount of $376,873.

**Parent Debtor Distribution Unsecured Claim**: The General Unsecured Claim of Parent against Debtor Distribution in the Allowed amount of $22,816,767.

**Parent Debtor Retail Affiliate Agreement Claim**: The Administrative and Cure Claim of Parent arising from its provision of services to Debtor Retail post-petition in the Allowed amount provided in the PSA.

**Parent Obligations**: The obligations of the Debtors and Debtors-in-Possession to Parent including the obligations to satisfy the Parent Claims.

**Person**: An individual, corporation, partnership, limited liability company (including its members), joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity

**Petition Date**: March 26, 2021, the date upon which the Debtor filed its voluntary Chapter 11 bankruptcy petition.

**Plan**: This plan and all exhibits hereto, either in its present form or as may be altered, amended, modified, or supplemented from time to time proposed by the Debtors pursuant to sections 1190, 1191, and 1129 of the Bankruptcy Code and the Bankruptcy Rules.

**Plan Scheduling Order**: The order entered by the Bankruptcy Court on [●], 2021, establishing dates and times relating to actions that must be taken by Claimants and Interest Holders with respect to the Plan, voting on the Plan, and other matters [Dkt. No. [●]].

**Plan Supplement**: Any supplement to this Plan or any Exhibits thereto to be filed by the Debtors as permitted herein on or before the Plan Supplement Filing Date.

**Plan Supplement Filing Date**: The date on which the Plan Supplement is filed, which shall be on or before [●], 2021.

**Plan Support Agreement**: The conditional agreement between the Debtor and Parent that enables the Debtor to satisfy all of its financial obligations under this Plan.

**Priority Claims**: All Priority Non-Tax Claims and Priority Tax Claims.

**Priority Non-Tax Claims**: Those claims afforded priority under Bankruptcy Code § 507(a) other than Administrative Claims and Priority Tax Claims.

**Priority Tax Claims**: Those claims afforded priority under Bankruptcy Code §§ 502(i) or 507(a)(8).

**Pro Rata Share**: The proportionate share of a distribution calculated by dividing proportionately among the Allowed Claims in a Class according to the aggregate amount of the Allowed Claims in such Class.

**Professional**: Those persons (a) retained pursuant to an order of the Bankruptcy Court in accordance with Bankruptcy Code §§ 327, 1103, and/or 1106 and to be compensated for services rendered prior to the Effective Date pursuant to Bankruptcy Code §§ 327, 328, 329, 330, and/or 331; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code §§ 330 and 503(b)(2).

**Professional Fee Bar Date**: The first Business Day that is 30 days after the Effective Date.

**Professional Fee Claim**: To the extent Allowed pursuant to a Final Order of the Bankruptcy Court, (a) a claim under Bankruptcy Code §§ 327, 331, 503(b), 1103, or 1106 for compensation for professional services rendered or expenses incurred prior to the Effective Date on the Estates' behalf; by a Professional, which, for this purpose include the Subchapter V Trustee and (b) a claim under Bankruptcy Code § 503(b)(4) for compensation for professional services rendered.

**PSA**: The Plan Support Agreement.

**Rejection Claim**: Any Claim for amounts due as a result of the rejection of any Executory Contract or Unexpired Lease that is rejected by either Debtor pursuant to the Plan, which Claim must be filed by the Rejection Claim Bar Date.

**Rejection Claim Bar Date**: 30 days after the Effective Date; provided, however, if a motion seeking assumption or rejection is not heard and determined prior to the Effective Date, any Claim based thereon shall be filed within 30 days after entry of an Order ruling on such a motion.

**Released Parties**: (a) the Debtors and the Debtors' Estates; (b) Parent, and (c) with respect to the entities or persons identified in subsections (a) and (b), each of such entities' or persons' respective predecessors, successors, and assigns, and respective current and former shareholders, affiliates, subsidiaries, principals, employees, agents, officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants.

**Releasing Parties**: All Persons who have held, hold, or may hold Claims, Rights of Action, causes of action, or liabilities that are subject to compromise and settlement pursuant to the terms of the Plan or are otherwise discharged, satisfied, stayed, or terminated pursuant to the Plan.

**Reorganized Debtors**: The Debtors upon and after the Effective Date of this Plan.

**Rights of Action**: Any and all actions, claims, proceedings, causes of action, suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise, including actions brought prior to the Petition Date, actions under chapter 5 of the Bankruptcy Code, and actions against any Person or entity for failure to pay for products or services provided or rendered by either Debtor, all claims, suits or proceedings relating to enforcement of either Debtor's intellectual property rights, including patents, copyrights, and trademarks, and all claims or causes of action seeking recovery of either Debtor's or the Reorganized Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtor's or the Reorganized Debtor's businesses, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

**S & A Distribution:** S & A Distribution, Inc., the Debtor in Case No. 21-22175 (RDD).

**S & A Retail:** S & A Retail, Inc., the Debtor in Case No. 21-22174 (RDD).

**Schedules**: Each Debtor's schedules of assets and liabilities, statements of financial affairs, and such other schedules in accordance with Bankruptcy Code § 521 filed by the Debtors with the Bankruptcy Court, as amended [Dkt. Nos. 42 and 43].

**Secured Claim**: A Claim secured by a perfected and valid lien or security interest on property of either Debtor's Estate.

**Subchapter V Trustee**: Yann Geron, the trustee appointed by the U.S. Trustee under section 1183(a) of the Bankruptcy Code, c/o Geron Legal Advisors LLC, 370 Lexington Avenue, Suite 1101, New York, NY 10017, (646) 560-3224, ygeron@geronlegaladvisors.com.

**Third Party Release**: As defined in Article XII of the Plan.

**Unsecured Claim**: Any Claim that is not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, a Secured Claim, or a Priority Non-Tax Claim.

**U.S. Trustee**: The Office of the United States Trustee for the Southern District of New York; U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014, T: 212-510-0500 F: 212-668-2256.

**Unexpired Lease**: A lease of nonresidential real property to which either Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**Unimpaired**: Means, with respect to a Class of Claims or Interests, such Class is not Impaired.

## RULES OF INTERPRETATION AND CONSTRUCTION

**Generally**. For purposes of the Plan: (i) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended,

modified, or supplemented; (ii) unless otherwise specified, all references in the Plan to Sections, Articles, and exhibits are references to Sections, Articles, and exhibits of or to the Plan; and (iii) the rules of construction set forth in section 102 of the Bankruptcy Code and the Bankruptcy Rules shall apply unless superseded herein or in the Confirmation Order.

**Time Periods**. In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**Miscellaneous Rules**. (i) The words "herein," "hereof," "hereunder," and other words of similar import refer to the Plan as a whole, not to any particular Section, subsection, or clause, unless the context requires otherwise; (ii) whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, and the neuter; and (iii) captions and headings to Articles and Sections of the Plan are inserted for convenience of reference only and are not intended to be a part or to affect the interpretation of the Plan.

## INTRODUCTION

S & A Retail, Inc. and S & A Distribution, Inc., each a Debtor and Debtor-in-Possession, propose the following Joint Chapter 11 Plan of Reorganization.

In accordance with section 1190 of the Bankruptcy Code, this Plan includes (a) a brief history of the business operations of the Debtors, (b) a liquidation analysis, and (c) projections with respect to the ability of the Debtors to make payments under the Plan.

This Plan is a contract between the Debtors and all of their creditor constituencies. It provides the mechanism, timing, and details of all treatment and payment of creditor Claims. It is the blueprint for the Debtors' emergence from bankruptcy as stronger and viable entities. The information contained in this document is designed to provide Claimants and Interest Holders of the Debtors with information to enable them to make an informed judgment concerning the method by which the Debtors plan to reorganize and emerge from bankruptcy. **If the Bankruptcy Court confirms the Plan, it will be binding on the Debtors, their creditors, equity holders, and other interested parties.**

This Plan provides for a comprehensive reorganization of the Debtors to preserve their going concern value and future business. Under this Plan, the Debtors, with the assistance of Parent under the Plan Support Agreement, will (i) pay all of their Administrative and Priority Claims in full on the Effective Date of the Plan and (ii) make a distribution to each of their Allowed General Unsecured Creditors at the conclusion of the Claims Reconciliation Process in the estimated approximate amount of 2% for S & A Retail, Inc. and 15% for S & A Distribution, Inc. of each Allowed General Unsecured Creditor's Claim.[4]

The Debtors believe this Plan satisfies the primary goal of Chapter 11, which is to enable the Debtors to reorganize, restructure, and emerge as a productive businesses. The Debtors submit that this Plan will accomplish these goals and that Confirmation of the Plan will provide the best possible return to Holders of Claims and Interests and is in the best interests of the Debtors, their creditors, and Interest Holders.

### ACCORDINGLY, THE DEBTORS STRONGLY URGE YOU TO VOTE IN FAVOR OF THIS PLAN.

### I.

### THE PLAN CONFIRMATION HEARING

Pursuant to Section 1128 of the Bankruptcy Code, a Confirmation Hearing will be held on **[●], 2021 at 10 a.m. ET**. The Bankruptcy Court may adjourn the Confirmation Hearing from time to time without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

---

[4] The Plan is a "pot plan," meaning that a lump sum will be available to Holders of General Unsecured Claims, each of whom will receive a *pro rata* distribution from the "pot" that is estimated to be approximately 2% for S & A Retail, Inc. and 15% for S & A Distribution, Inc.

#10423533 v3 \018600 \0037

Any objection to confirmation of the Plan must be made in writing and specify in detail the name and address of the objecting party, all grounds for the objection, and the amount of the Claim or Interest of the objecting party. Any objection must be filed with the Bankruptcy Court and served so that it is received by the Bankruptcy Court, the U.S. Trustee, the Subchapter V Trustee, and Counsel for the Debtor on or before **[●], 2021**. Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

Failure by a Claimant or Interest Holder to timely file an objection to the Plan or timely cast a Ballot in accordance with the Plan Scheduling Order shall constitute an agreement by silence to accept the terms contained in this Plan.

Any interested party desiring further information about the Plan should contact Counsel for the Debtors.

## BACKGROUND

### A.    Description and History of the Debtors' Businesses

Debtor Distribution was formed in Delaware in 1999 and is a wholly owned subsidiary of Geox Holland B.V., a Dutch subsidiary of Parent. Debtor Retail was formed in Delaware in 2001 as a wholly-owned subsidiary of Distribution. Both Debtors are headquartered at 334 S Buckhout St., Irvington, NY 10533.

Distribution provides for the wholesale channel of Geox Branded Products designed by or for Geox, an international footwear, apparel, and accessories company, headquartered in Italy. Retail provides for the brick and mortar and e-commerce sales of Geox Branded Products in the United States. At the end of 2014, Retail maintained fourteen Geox monobrand stores throughout the United States. Beginning around that time and continuing to early 2020, Retail terminated or did not renew various leases, reducing its footprint to two locations—the Aventura Mall in Florida and a 34th Street location in New York City.

The Debtors utilize a professional employer organization operated by ADP to provide the staff and office personnel for both companies. All employment-related functions are outsourced to ADP. The functions and tasks ADP performs include bi-weekly payroll, a 401K plan, and provision of individual insurance (medical, dental, vision, life, short-term disability, and long term disability), workers compensation, and additional voluntary coverages. Because all employment-related functions are outsourced to ADP, Debtors have no employees among their creditors.

### B.    The Debtors' Business Model

Geox Branded Products are primarily manufactured in the Far East and shipped to a Canadian subsidiary of Geox, which then ships to Distribution. These cross-border transfers are subject to transfer pricing, a tax-centric mechanism that is a common feature in the relationship between U.S. domestic entities with foreign affiliates.

After the Geox Branded Products are purchased, Debtors promote, market, and distribute them in the United States through retail brick and mortar, wholesale, and e-commerce channels.

Logistics and warehousing are handled by a third-party fulfillment center. Debtors' three channels are:

- **Brick and Mortar Retail**. Prior to the Petition Date, Retail maintained two leased locations—Aventura and 34th Street—from which it conducted direct to consumer sales. The ongoing COVID-19 pandemic and governmental response resulted in a temporary complete shutdown of retail operations. Though Aventura eventually reopened to drastically reduced foot traffic, Debtor Retail determined that the location did not serve its best interests, vacated the Aventura premises, and filed a motion to reject the Aventura lease during this Case. The 34th Street location never reopened.

- **E-Commerce**. Retail sells Geox Branded Products online through the website, https://www.geox.com/en-US, owned and operated by Geox. These online sales are managed by Retail through a logistic service provider that fulfills and ships customer's online orders.

- **Wholesale.** Debtor Distribution has historically had relationships with a number of department stores and smaller local stores throughout the United States to provide goods directly and via a dropshipping model. Distribution's primary activities with respect to wholesale distribution include organization of sales campaigns, organizing and implementing appearance at trade shows, negotiation of conditions with third-party customers, and supervision of distribution of goods.

### C.    Prepetition Debt Structure

Neither Debtor has secured debt. The Debtors individually manage their own cash flow needs using profits to pay obligations in the ordinary course of business. Historically, Retail and Distribution would advance funds between each other, as available, to cover shortfalls. When the Debtors have insufficient cash to fund operations, Geox provides funding in the form of a loan, which is partially repaid in periods where Distribution has an excess of cash. As of the Petition Date, Distribution had an outstanding loan balance with Geox of approximately $24 million.

Geox is an Italian entity. Consequently, Geox and the Debtors are subject to different tax jurisdictions and regimes, and transactions between the entities can give rise to cross border taxation and transfer pricing issues. Accordingly, Geox and the Debtors operate under a transfer pricing policy intended to ensure arm's length results for intercompany transactions and compliance with U.S. and Italian tax regulations including the taxation treaty between the United States and Italy.[5] Transfer pricing rules, applicable for tax purposes to transactions between associated companies, may imply adjustments on intercompany pricing on transactions, goods, or services as well as profit adjustments in order to ensure that the market conditions and the arm's length principle are satisfied, in accordance with tax regulations and the Convention.

---

[5] Convention and the Protocol between the Government of the United States and Government of the Italian Republic for the Avoidance of Double Taxation with Respect to Taxes on Income and the Prevention of Fraud or Fiscal Evasion ("**Convention**").

As of the Petition Date, Debtors estimate they have, on a consolidated basis, approximately 10 trade creditors, landlords, and taxing authorities who are owed approximately $4.2 million in unsecured trade vendor and lease-related debt. All other debt is Insider or affiliate debt.

### D.    Events Leading to the Commencement of the Chapter 11 Cases

In or around 2014, Debtors focused on reducing operating and overhead cost by reducing their retail footprint and directing their strategy toward initiatives driving e-commerce and wholesale. This pivot proved well-timed, as 2020 saw the arrival of the COVID-19 pandemic, resulting in temporary closure of brick-and-mortar locations and a heavy reliance on the e-commerce platform.

In March of 2020, all retail locations closed pursuant to government-mandated shutdowns. The 34th Street location has remained closed and is the subject of pending litigation commenced by Retail and Geox.[6] While the Aventura location subsequently reopened, foot traffic suffered a significant decrease leading to a commensurate decrease in retail sales.

Distribution's wholesale customers suffered from the government shutdowns and decreased foot traffic as well, with some—Neiman Marcus and Lord & Taylor, for example—filing for chapter 11 relief themselves, leaving Distribution with uncollectible receivables. These factors led to a drastic reduction in Distribution's wholesale business. The shutdowns and store closings caused Debtors' daily sales volume to drop dramatically.

In 2020, Retail's net sales fell by approximately 55% year over year, despite a slight increase in e-commerce, and Distribution's sales fell by 40%. This rapid reduction in revenue resulted in liquidity constraints, impairing Debtors' ability to satisfy ongoing operational expenses, including rent payments for the leased locations.

Despite setbacks due primarily to the pandemic, Debtors' believed their core business model to be sound, and expect sales to increase as COVID-19 recedes. However, the substantial uncertainty regarding the length of the pandemic and its lasting economic effects make a prompt return to pre-pandemic sales levels unlikely.

Consequently, Debtors filed for bankruptcy relief in order to restructure their debt and operations in advance of a return to "normal" upon the full reopening of markets post-pandemic. Debtors' intention on filing was to use chapter 11 to confirm a plan, allowing it to shed burdensome leases and debt, exiting the bankruptcy as smaller, boutique-type companies with healthy balance sheets, focusing on better margins instead of volume of sales. The Debtors believe that by confirming this Plan, that they will achieve these goals.

---

[6] 34th Street is the subject of ongoing litigation in which termination of the lease is a critical issue. Debtor Retail has taken the position in the state court litigation in an action it commenced that the lease was terminated due to frustration of purpose, and impossibility of performance, and tendered the keys to the landlord prepetition. Landlord rejected the tender and has taken the position that the lease is still operating. Accordingly, Retail filed a motion to reject the lease out of abundance of caution so that in the event a court determines the lease was not terminated, Retail will have preserved the section 502(b)(6) limitation for the benefit of its Estate. By order entered on May 4, 2021, the Bankruptcy Court granted the motion to reject [Dkt. No. 50].

#10423533 v3 \018600 \0037

## II.

## EVENTS DURING THE CHAPTER 11 CASES

### A.    Commencement of the Cases

On March 26, 2021, the Debtors filed voluntary Petitions under chapter 11 of the Bankruptcy Code and elected to proceed under Subchapter V as "small business debtors." Since then, the Debtors have been operating as Debtors-in-Possession. On November 9, 2020, the United States Trustee appointed Yann Geron as the Subchapter V Trustee.

As described in detail in the Declaration of Bridgette Nally, pursuant to Local Bankruptcy Rule 1007-2 and in Support of Chapter 11 Petition and first Day Pleadings, [Dkt. No. 12], the Debtors filed for relief under Chapter 11 to preserve the going concern value of these viable businesses and protect the interests of the Debtors' creditors so that they could quickly emerge from Chapter 11 as stronger and well positioned companies.

### B.    The "First Day Pleadings"

Along with its Petition, the Debtors filed a number of "First Day Pleadings" seeking relief which the Debtors believed were necessary to avoid irreparable harm in the early days of these Chapter 11 Cases, enable them to efficiently administer their Estates and continue to operate their businesses with minimal disruption and loss of value during the chapter 11 process, and to ensure the best outcome for the Debtors, their Estates, and Creditors.

At the hearing held on March 30, 2021, the Bankruptcy Court granted all of the relief requested in the First Day Pleadings and issued final orders on March 31, 2021:

i.      *Order Directing Joint Administration of Chapter 11 Cases [Dkt. No. 23],*

ii.     *Order (i) Authorizing the Debtors to File a Consolidated Creditor Matrix and List of Top Twenty Unsecured Creditors, (ii) Approving Manner of Notice of Commencement of Chapter 11 Cases, and (iii) Granting Related Relief [Dkt. No. 27],*

iii.    *Order Pursuant to 28 U.S.C. § 156(c), 11 U.S.C. § 503(b)(1)(A), and Local Rule 5075–1 Authorizing the Retention and Employments of Omni Agent Solutions as Claims and Noticing Agent Effective as of March 26, 2021 [Dkt. No. 27],*

iv.     *Order (i) Authorizing Debtor to Continue to Use Existing Cash Management System, and (ii) Granting Related Relief [Dkt. No. 24],*

v.      *Order Authorizing, but not Directing, the Payment of Certain Prepetition Taxes and Fees, and Granting Related Relief [Dkt. No. 26],*

vi.     *Order Authorizing Debtor to Redact Certain Personally Identifiable Information for Debtor's Employees [Dkt. No. 25], and*

vii.   *Order Authorizing Debtors to (a) Honor Certain Prepetition Obligations to Customers in the Ordinary Course of Business, and (b) Granting Related Relief [Dkt. No. 28].*

### C.   Employment of Professionals

The Bankruptcy Court has approved the Debtors' applications to employ the following Estate professionals:

i.   *Morrison Cohen LLP, as general and restructuring counsel for the Debtor. [Dkt. No. 62].*

ii.   *Ryniker Consultants LLC as Financial Advisor to the Debtor. [Dkt. No. 63].*

iii.   *Omni Agent Solutions, as claims, noticing, and administrative Agent. [Dkt. Nos. 29 and 64].*

### D.   Schedules of Assets and Liabilities and Statement of Financial Affairs

On April 9, 2021, the Debtors filed their Schedules and Statement of Financial Affairs, a series of documents where the Debtors list all of their assets and liabilities, including, inventory, leases, contracts, obligations, debts, creditors, equity holders, litigations, and liabilities and certain other financial and operational material to provide Creditors and the Bankruptcy Court with a snapshot of the entire financial picture and circumstances of the Debtors on the day the Chapter 11 Cases were filed. [Dkt. Nos. 37, 38, 39, 40].

### E.   Bar Date Order

On April 23, 2021, the Bankruptcy Court entered an *Order Establishing Bar Dates for Filing Claims, and Approving the Form and Manner of Notice Thereof* [Dkt. No. 45]. In this order, the Bankruptcy Court set May 31, 2021, as the last date for the filing of creditor proofs of claim against the Debtors and September 22, 2021 as the last date for governmental units to file proofs of claim against the Debtors.

### F.   The Debtors' Leases

i.   *Lease Rejection Motion*

In the months leading up to the Petition Date, Debtor Retail and its advisors conducted an extensive review of its leases, the historical and projected future revenue and profits, their overall impact to Debtor's brand, and how each location fit within the optimal footprint for Debtor's go-forward business. Debtor Retail also analyzed the COVID-19 global pandemic and the resulting government shutdown orders, including the period of time in which each of the premises was closed to retail consumer foot traffic, beginning approximately in March 2020 and continuing for months.

Even after mandated restrictions were lifted, foot traffic remained so low that the Debtor determined that it was more beneficial to Debtor to have the location remain closed rather than incur daily operating costs. As a result, only Aventura briefly reopened. After this careful review and analysis, Debtor determined that this location was simply not viable.

#10423533 v3 \018600 \0037

Consequently, as of the Petition Date, Debtor Retail operated and directly managed 1 retail location dedicated to direct sales to the public in Miami, Florida. This location was closed and the premises vacated on or about April 30, 2021.

Debtor Retail's other lease location on 34th Street was closed prior to the Petition Date and never reopened. The lease at this location is the subject of ongoing litigation in which termination of the lease is a critical issue. Debtor Retail has taken the position in the state court litigation in an action it commenced that the lease was terminated due to frustration of purpose, and impossibility of performance, and tendered the keys to the landlord prepetition. The landlord rejected the tender and has taken the position that the least is still operating.

Consequently Debtors sought the entry of an *Order Authorizing (a) Rejection of Certain Unexpired Leases Effective as of the Petition Date, and (b) Abandonment of any Personal Property Related Thereto, and (ii) Granting Related Relief* [Dkt. Nos. 9, 18].

In addition to seeking to reject the Aventura lease, the motion to reject the 34th Street lease was made out of abundance of caution so that in the event a court determines the lease was not terminated, Retail will have preserved the section 502(b)(6) limitation for the benefit of its Estate.

By order entered on May 4, 2021, the Bankruptcy Court granted the motion to reject the 34th Street Lease [Dkt. No. 50]. The portion of the motion to reject the Aventura lease has been continued and will be heard on July 20, 2021. [Dkt. No. 61]. The Debtors expect the Aventura lease to be rejected on that date *nunc pro tunc* to the date Debtor Retail vacated the Aventura premises.

### G.    Administrative Reporting and Obligations

Operating in Chapter 11 requires the Debtor to make various periodic reports and filing. The Debtor is current on their reporting obligations with the U.S. Trustee The Debtor is also obligated to file various reports with the Bankruptcy Court regarding its progress to a Plan and discussions with the Subchapter V Trustee. The Debtor has satisfied all of these obligations.

### III.

### THE CHAPTER 11 PLAN PROCESS AND CONFIRMATION REQUIREMENTS IN A SUBCHAPTER V CASE

The end game of these Chapter 11 Cases is the confirmation of the Plan. In order to provide creditors and parties in interest with sufficient information to analyze the Plan, this document contains a balance sheet analysis, projections, valuations, and a liquidation analysis.

In order for a Bankruptcy Court to confirm the Plan, under sections 1129, 1190, and 1191 of the Bankruptcy Code, the Bankruptcy Court must:

i.    *find that the Plan satisfies the "best interest of creditors test"—meaning that creditors will receive more under the Plan than they would get if the Debtor and its assets were liquidated under Chapter 7 of the Bankruptcy Code,*

ii.    *find that the Plan is "Fair and Equitable"—meaning that the Plan must provide distributions to creditors greater than the liquidation value of the Debtor's Estate and no less than the projected "Disposable Income" of the Debtor, as defined in Section 1191(d) of the Bankruptcy Code over a certain commitment period, and*

iii.    *find that the Reorganized Debtors will be, or is reasonably likely to be, able to make the payments it promises to make under the Plan.*

### A.    Liquidation Analysis

Bankruptcy Code § 1129(a)(7) requires that in order for this Plan to be confirmed, each creditor must either have voted to accept this Plan (or be deemed to have accepted this Plan), or this Plan must provide for each creditor to receive at least as much as it would as of the Effective Date if the Debtor were liquidated under Chapter 7 on such date.

A detailed liquidation analysis prepared by Debtor Retail with the assistance of its advisors is set forth in **Exhibit 1** to this Plan. The liquidation analysis provides separate listing and analysis of all of each Debtor's assets and liabilities.

A detailed liquidation analysis prepared by Debtor Distribution with the assistance of its advisors is set forth in **Exhibit 2** to this Plan. The liquidation analysis provides separate listing and analysis of all of each Debtor's assets and liabilities.

Debtor Retail and its advisors have concluded that a liquidation of the Debtor Retail's assets would result in $463,747 available for the satisfaction of the Claims of all Impaired creditors whose claims are estimated to equal $93,514,955, which would result in a 0.2% distribution to Unsecured Creditors.

Debtor Distribution and its advisors have concluded that a liquidation of the Debtor Distribution's assets would result in $3,269,072 available for the satisfaction of the Claims of all Impaired creditors whose claims are estimated to equal $25,249,403, which would result in a 13% distribution to Unsecured Creditors.

### B.    The Plan Satisfies the "Best Interest of Creditors Test" and is "Fair and Equitable"

This Plan provides for a comprehensive reorganization of each Debtor to preserve its going concern value and future business. Subchapter V contemplates under 1191(c) of the Bankruptcy Code that the Plan provide a payout to creditors of all of each Debtor's disposable income over a 3 to 5 year commitment period ("**Disposable Income**").

Based upon the analysis prepared by Debtor Retail with the assistance of its advisors, Debtor Retail's projected Disposable Income post Effective Date over a 3, 4, or 5 period is negative and therefore, less than Liquidation Value. This analysis is contained at **Exhibit 3** to this Plan. Consequently, in order for Debtor Retail to confirm this Plan it must provide creditors with a distribution that is more than the Liquidation Value.

Based upon the analysis prepared by the Debtor Distribution with the assistance of its advisors, the Debtor Distribution's projected Disposable Income post Effective Date over a 3, 4, or 5 period is negative and therefore, less than Liquidation Value. This analysis is contained at **Exhibit 4** to this Plan. Consequently, in order for Debtor Retail to confirm this Plan it must provide creditors with a distribution that is more than the Liquidation Value.

Sections 1191(c)(2)(A) and (B) of the Bankruptcy Code allow the Debtor to make distributions over a period of between 3 to 5 years under a plan. Section 1191(c)(2)(A) also authorizes a debtor to make a lump sum payment that is equal to the present value of what would be the multi-year distribution.

In the case of both Debtors, the Plan provides for distributions to creditors greater than the Liquidation Value by making a lump sum distribution at the conclusion of the Claims Reconciliation Process. The Plan does this by providing a distribution to creditors that is a multiple of the Liquidation Value. The amount of this multiple will be dependent upon whether the Plan is confirmed consensually or non-consensually.

Under the Bankruptcy Code, the Debtors can confirm the Plan in one of two ways: (i) on a consensual basis under Sections 1191(a) and 1129(a) of the Bankruptcy Code—this requires that the unsecured creditors in Class 2 and 2A vote in favor of the Plan by at least 2/3 in dollar amount and more than 1/2 in number of the Allowed Claims in each Class, or (ii) on a non-consensual basis under Section 1191(b) of the Bankruptcy Code—under this section the Plan would be confirmed under the "cram down" provisions of the Bankruptcy Code.

In the event that the Plan is confirmed consensually, the Funding Commitment will be sufficient to provide a $150,000 pot to fund Class 2 Allowed Claims, and a $203,057 pot (which is a 1.25 multiple of Liquidation Value) to fund distributions to Class 2A Allowed Claims. The Plan is a "pot plan," meaning that a lump sum will be available to Holders of General Unsecured Claims, each of whom will receive a distribution of their Pro Rata Share from the "pot" that is estimated to be approximately 2% for creditors of Debtor Retail and 16% for creditors of Debtor Distribution.

In the event the Plan is not consensual, the Funding Commitment will be sufficient to provide a $100,000 pot to fund Class 2 Allowed Claims, and a $178,690 pot (which is a 1.10 multiple of Liquidation Value) to fund distributions to Class 2A Allowed Claims. This will result in an approximate distribution on account of Allowed General Unsecured Claims of 1% for creditors of Debtor Retail and 14% for creditors of Debtor Distribution.

The difference between the two scenarios is detailed on **Exhibits 1** and **2**.

In either case, this will enable the Debtors to satisfy the requirement of section 1129(a)(7) of the Bankruptcy Code because Holders of Allowed General Unsecured Claims who comprise the only Impaired Classes of creditors, will receive an amount materially greater than the amount these creditors would be expected to receive in a hypothetical Chapter 7 liquidation.

**C.** **The Plan is Feasible and the Debtors Will be Able to Make All Distributions Under the Plan**

Sections 1191(c)(3)(A)(i) and (ii) of the Bankruptcy Code require that the debtor "be able to make all payments under the plan; or that there is a reasonable likelihood that the debtor will be able to make all payments under the plan." The Debtors' Plan satisfies these requirements.

In order to make the distributions proposed under the Plan, the Debtors have entered into a Plan Support Agreement with Parent. Under the PSA, Parent will provide the Debtors with sufficient funds to pay (i) all Allowed Priority Claims and Administrative Claims in full as required by the Bankruptcy Code on or shortly after the Effective Date and (ii) all other distributions provided under this Plan shortly after the Effective Date in a single payment. The PSA is attached to this Plan as **Exhibit 5**.

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation, and Distribution under this Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1193 OF THE BANKRUPTCY CODE, FEDERAL RULE OF BANKRUPTCY PROCEDURE 3019, AND THIS PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THIS PLAN PRIOR TO ITS EFFECTIVE DATE.**

**IV.**

**TREATMENT OF UNCLASSIFIED CLAIMS**

As provided in Bankruptcy Code § 1123(a)(1), Administrative Claims, Priority Tax Claims, and Professional Fee Claims are unclassified claims, not considered Impaired and not entitled to vote on the Plan, because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code. Treatment of these claims is provided below.

**A.** **Administrative Claims**. Except to the extent that a Holder of an Allowed Administrative Claim and either the Debtors or Reorganized Debtor, as applicable, agree to less favorable treatment, each Holder of an Allowed Administrative Claim (other than Professional Fee Claims) will, in exchange for full and final satisfaction, settlement, release, and discharge of the Allowed Administrative Claim, be paid the full unpaid amount of such Allowed Administrative Claim in Cash within fourteen days of the Effective Date, *provided*, *however*, that Administrative Claims incurred by the Debtors in the ordinary course of business shall be paid in the ordinary course of business in accordance with applicable terms and conditions without further notice to or order of the Bankruptcy Court and that any cure amounts related to Unexpired Leases and/or

Executory Contracts that are assumed shall be paid in full in connection with such assumption as set forth below.

**B.     Bar Date for Administrative Claims**. Proofs of Administrative Claims or requests for the allowance and payment of Administrative Claims, other than Professional Fees, for the period from the Petition Date through the Effective Date must be filed by the Administrative Claims Bar Date. Any entity failing to file a proof of Administrative Claim or request for payment thereof on or before the Administrative Claims Bar Date shall be forever barred from asserting such Claim against the Debtors or their Estates, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, or recover such Administrative Claim.

**Any component of the Parent Claims that are Administrative Claims (i) will not receive a distribution as an Administrative Claim, (ii) is not included in determining the amount of Administrative Claims, and (iii) will be satisfied in accordance with the PSA.**

**Estimated Amount of Administrative Claims for Debtor Retail is $40,000.**

**Estimated Amount of Administrative Claims for Debtor Distribution is $406,000.**

**C.     Professional Fee Claims**. Each Allowed Professional Fee Claim shall be paid in full in Cash on the later of: (a) three days after the Professional Fee Claim is Allowed; and (b) another date on which the Holder of the Professional Fee Claim and the Debtors or Reorganized Debtors agree. Each Person seeking an award by the Bankruptcy Court of Professional Fees must file with the Bankruptcy Court and serve on these Reorganized Debtors its final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by the Professional Fee Bar Date.

**Estimated Amount of Professional Fee Claims: $550,000**

**D.     Priority Tax Claims**. Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, release, and discharge of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive the treatment set forth in section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on or before the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and such Holder or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

**Estimated Amount of Priority Tax Claims for Debtor Retail is $8000.00**

**Estimated Amount of Priority Tax Claims for Debtor Distribution is $750.00**

# V.

## CLASSIFICATION AND TREATMENT

## OF CLASSIFIED CLAIMS AND INTERESTS

**A.     Classification and Treatment Generally**. Pursuant to sections 1122, 1123, and 1190 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests, which are placed in a particular Class for all purposes under the Plan, including, without limitation, voting, confirmation, and receiving Distributions under the Plan, as set forth herein. In accordance with section 1123(a)(1) of the Bankruptcy Code, Claims arising under sections 507(a)(2) or 507(a)(8) of the Bankruptcy Code are not classified and their treatment is set forth in Article IV.

**B.     Classification and Treatment of Classified Claims and Interests.** Classified Claims and Interests are divided into numbered classes as follows:

| Class | Treatment | Entitled To Vote |
|---|---|---|
| **Class 1** – Priority Non-Tax Claims of Debtor Retail | **Unimpaired** | **No (Deemed to Accept)** |
| **Class 1A** – Priority Non-Tax Claims of Debtor Distribution | **Unimpaired** | **No (Deemed to Accept)** |
| **Class 2** – General Unsecured Claims of Debtor Retail | **Impaired** | **Yes** |
| **Class 2A** – General Unsecured Claims of Debtor Distribution | **Impaired** | **Yes** |
| **Class 3** – Interests in Debtor Retail | **Unimpaired** | **No (Deemed to Accept)** |
| **Class 3A** – Interests in Debtor Distribution | **Unimpaired** | **No (Deemed to Accept)** |

1.     Class 1 and Class 1A: Priority Non-Tax Claims

     a.     *Treatment*: Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of such Claim, each Holder shall receive payment of its Allowed Priority Non-Tax Claim in full in cash on, or as soon as reasonably practicable thereafter, the later of (a) the Effective Date and (b) the date on which such Claim becomes an Allowed Priority Non-Tax Claim.

      b.      *Impairment and Voting*: Class 1 is Unimpaired and all Holders of Class 1 Claims are conclusively deemed to have accepted the Plan and are not entitled to vote on the Plan.

**Estimated Amount of Claims in Class 1: $0.00**

**Estimated Amount of Claims in Class 1A: $0.00**

2.      Class 2 and Class 2A: General Unsecured Claims

      a.      *Treatment:* Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each Holder shall, in exchange for full and final satisfaction, settlement, and release of such Claim, receive its Pro Rata Share of the Class 2 or Class 2A Distribution Amount, as applicable, as soon as reasonably practicable after the Debtor has concluded the Claims Reconciliation Process. Upon payment of the entire Class 2 and 2A Distribution Amount, all obligations to Class 2 and Class 2A General Unsecured Creditors under this Plan are fully satisfied.

      b.      *Impairment and Voting*: Class 2 and Class 2A are Impaired and all Holders of Class 2 or 2A Claims are entitled to vote on the Plan.

**Estimated Amount of Claims in Class 2: $93,514,955**

**Estimated Amount of Claims in Class 2A: $25,249,403**

**Any component of the Parent Claims that are General Unsecured Claims will not receive a distribution as an Unsecured Claim and (ii) will be satisfied in accordance with the PSA.**

3.      Class 3: and Class 3A Interests:

      a.      *Treatment*: All holders of Interests shall retain their Interests.

      b.      *Impairment and Voting*: Class 3 and Class 3A are Unimpaired and all Holders of Class 3 and Class 3A Interests are conclusively deemed to have accepted the Plan and are not entitled to vote on the Plan.

## VI.

## ACCEPTANCE OR REJECTION OF THE PLAN

A Class shall have accepted the Plan if it is accepted by at least 2/3 in dollar amount and more than 1/2 in number of the Allowed Claims in such Class (excluding Insiders) that have cast ballots with respect to the Plan. Only those votes cast by holders of Allowed Claims shall be counted in determining whether acceptances have been received in sufficient number and amount to obtain confirmation.

#10423533 v3 \018600 \0037

Classes 2 and 2A are impaired and entitled to vote. Classes 1, 1A, 3, and 3A are unimpaired and conclusively deemed to have accepted the Plan and are not entitled to vote.

## VII.

## MEANS OF IMPLEMENTATION

**A.**    **Plan Funding.** All distributions under this Plan will be provided by the Funding Commitment and certain of the Debtors Cash on hand as of the Effective Date.

**B.**    **Continued Reorganized Operations.** The Reorganized Debtors will continue to operate with the primary purpose of continuing to conduct the Debtors' business through online sales and wholesale business.

**C.**    **Corporate Governance.** The Reorganized Debtors will continue to be governed by their board of directors, consisting of Livio Libralesso, Pierluigi Ferro, and Bridgette Nally. On the Effective Date, the Debtors' directors and officers shall remain the directors and officers of the Reorganized Debtor.

**D.**    **Section 1145 Exemption.** In accordance with section 1145 of the Bankruptcy Code, the retention of the Interests under the Plan is exempt from all federal, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker dealer in such securities and is not deemed to be a public offer of such securities.

## VIII.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.**    **Assumption and Rejection of Executory Contracts and Unexpired Leases**. Except as otherwise provided herein, each Executory Contract and Unexpired Lease shall be deemed assumed pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by a Debtor; (2) expired or terminated pursuant to its own terms before the Effective Date; or (3) is the subject of a motion to reject pending on the Confirmation Date. Entry of the Confirmation Order shall constitute a Final Order approving the assumptions or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

All assumed Executory Contracts and Unexpired Leases shall remain in full force and effect for the benefit of the Reorganized Debtors, and be enforceable by the Reorganized Debtors in accordance with their terms, notwithstanding any provision in such assumed Executory Contract or Unexpired Lease that prohibits, restricts, or conditions such assumption, assignment, or transfer. Any provision in the assumed Executory Contracts and Unexpired Leases that purports to declare a breach or default based in whole or in part on commencement or continuance of this Chapter 11 Case or any successor cases shall be deemed unenforceable. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including, without

limitation, any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized Debtors' assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed unenforceable such that the transactions contemplated by the Plan will not entitle the non-debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms may have been modified by a court order or by applicable law.

     **B.**    **Bar Date for Rejection Damages**. If the rejection by a Debtor of an Executory Contract or an Unexpired Lease pursuant to this Article results in damages to the other party or parties to such Executory Contract or Unexpired Lease, a Rejection Claim arising from such rejection shall not be enforceable against the Debtors or their Estates or agents, successors, or assigns, unless a proof of Claim is filed so as to actually be received on or before the Rejection Claim Bar Date.

     **C.**    **Rejection Damages Proofs of Claims.** Any Person required to file a proof of Claim arising from the rejection of an Executory Contract or Unexpired Lease under the Plan and that fails to timely do so shall be forever barred, estopped, and enjoined from asserting such Claim, and such Claim shall not be enforceable against the Debtors, their Estates, and their respective properties, and the Debtors, their Estates, and their properties shall be forever discharged from any and all liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.

     **D.**    **Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**. The proposed Cure amount for all Executory Contracts and Unexpired Leases other than any Executory Contract or Unexpired Lease that (1) was assumed or rejected previously by a Debtor; (2) expired or terminated pursuant to its own terms before the Effective Date; or (3) is the subject of a motion to reject pending on the Confirmation Date, shall be $0.00 unless otherwise indicated on the Cure Schedule. The Debtors shall file the Cure Schedule on or before [●], 2021. The Debtors shall not be required to serve the Cure Schedule on any Executory Contract or Unexpired Lease counterparty not specifically named therein. For the avoidance of doubt, if an Executory Contract or Unexpired Lease between the Debtors and any non-Debtor counterparty is neither rejected nor listed on the Cure Schedule as an assumed Executory Contract or Unexpired Lease with a proposed Cure amount, or if no Cure Schedule is filed, then the Debtors intend to assume such Executory Contract or Unexpired Lease and asserts that the Cure amount for such Executory Contract or Unexpired Lease is $0.00.

     Any counterparty to an Executory Contract or Unexpired Lease that objects to (1) the assumption of such Executory Contract or Unexpired Lease, (2) the proposed Cure amount, (3) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (4) any other matter pertaining to assumption, shall file a written objection and serve it on the Notice Parties in a manner to be actually received by no later than 4 p.m. ET on [●], 2021. Any timely filed responses or objections will be heard by the Bankruptcy Court at the Confirmation Hearing or on such other date agreed to by the parties or

ordered by the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to any of the foregoing matters related to assumption will be deemed to have assented and will be deemed to have forever released and waived any such objection. Payment of any Cure amount shall be made following the entry of a Final Order or orders resolving any dispute related thereto and approving the assumption and shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

E.      **Insurance Policies**. Notwithstanding anything in the Plan to the contrary, as of the Effective Date, the Debtors shall assume (and assign to the Reorganized Debtors, if necessary, to continue the Insurance Policies in full force) all of the Insurance Policies pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the Insurance Policies.

F.      **Modifications, Amendments, Supplements, Restatements, or Other Agreements.** Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated pursuant hereunder.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G.      **Contracts and Leases Entered Into After the Petition Date.** Contracts and leases entered into after the Petition Date by the Debtors, and any Executory Contracts and Unexpired Leases assumed by the Debtors, may be performed by the Reorganized Debtors in the ordinary course of business and in accordance with the terms thereof.

H.      **General Reservation of Rights**. Nothing contained in the Plan shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtors, or any affiliates thereof, have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as

applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

## IX.

## DISTRIBUTIONS

**A.      Reorganized Debtors to Make Distributions.** Unless ordered otherwise in the Confirmation Order, the Reorganized Debtors or Omni, on behalf of the Reorganized Debtors, shall make all payments required by this Plan.

**B.      Method of Payment; Payments, Filings, and Notices Only on Business Days**. Payments of Cash under the Plan must be made by check drawn on a domestic bank or by wire transfer from a domestic bank. Whenever any payment, distribution, filing, delivery, or notice to be made under the Plan is due on a day other than a Business Day, such payment, distribution, filing, delivery, or notice may instead be made, without interest or penalty, on the immediately following Business Day.

**C.      Undeliverable or Unclaimed Distributions**. Payments required by this Plan, if made by check, shall be mailed to the address set forth in any proof of claim, to the address set forth in any written notice of address change filed with the Bankruptcy Court or provided to the Debtors or their counsel, or to the address set forth in the Debtors' schedules if no proof of claim has been filed and no written notice of address change has been filed or provided. If any distribution to a Holder of an Allowed Claim is returned to the Reorganized Debtors as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtors are notified in writing of such Holder's then-current address or other necessary information for delivery within 60 days of the date of the initial attempted distribution. If such Holder provides the requisite notification, the Reorganized Debtors will, within 30 days of receipt of such information, deliver such undeliverable distribution to the Holder. If such Holder fails to provide information within the 60 day period or such subsequent distribution is returned as undeliverable, such undelivered distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revert to the applicable Reorganized Debtor. Notwithstanding anything to the contrary contained in the Plan, nothing in this provision shall act as a bar to entry of a Final Decree or closure of the Chapter 11 Cases.

**D.      Fractional Dollars, De Minimis Distributions.** Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down) with half dollars being rounded down. The entity making the Distributions shall have the discretion not to make payments of less than twenty-five dollars ($25) on account of any Allowed Claim, unless a specific request is made in writing to Omni or the Reorganized Debtors as applicable on or before thirty (30) days after the later of the Effective Date or the allowance of such claim.

**E.      Time Bar to Cash Payments**. Distribution checks issued in respect of Allowed Claims shall be null and void if not negotiated within 60 days after the date of issuance thereof. Thereafter, the amount represented by such voided check shall irrevocably revert to the applicable

Reorganized Debtor free and clear of any restrictions. Any Claim in respect of such voided check shall be discharged and forever barred from assertion against the Debtors, their Estates, or the Reorganized Debtors.

F.      **Setoff and Recoupment**. From and after the Effective Date, the Reorganized Debtors may, to the extent permitted by section 558 of the Bankruptcy Code or applicable non-bankruptcy law, set off against or recoup from any Claim on which distributions are to be made, any Rights of Action of any nature whatsoever that the Reorganized Debtors may have against the Holder of such Claim; *provided*, *however*, that neither the failure to effect such setoff or recoupment nor the Allowance of any Claim shall constitute a waiver or release of any right of setoff or recoupment, nor of any other Right of Action.

G.      **No Interest. No interest shall accrue or be paid on any Claim.**

H.      **Disputed Claims**. No payment will be made on account of a Disputed Claim unless such claim has been Allowed by final non-appealable order or resolved as provided below. Unless another time is set by order of the Bankruptcy Court, the Reorganized Debtors shall have until the Claim Objection Deadline to file objections to any Disputed Claim. The Claim Objection Deadline may be extended on motion of the Reorganized Debtors for cause, or on consent. For the avoidance of doubt, the Reorganized Debtors shall have the authority to settle and resolve any Disputed Claim on such terms as it deems appropriate without the need for Bankruptcy Court approval.

I.      **Withholding Taxes**. The Reorganized Debtors or Omni shall be entitled to deduct any federal, state, or local withholding taxes from any payments made under this Plan. As a condition to making any such payment, the Reorganized Debtors or Omni may require that the Holder of an Allowed Claim provide its taxpayer identification number and such other information and certification as may be deemed necessary for it to comply with applicable tax reporting and withholding laws. If any Holder of an Allowed Claim fails to provide such number, information, or certification within 60 days from the date notification of the need for such information is sent to the Holder, such Holder's distribution will be treated as unclaimed property in accordance with Article IX herein, or the amount required to be withheld may be so withheld and turned over to the applicable authority.

# X.

## ALLOWANCE OF CLAIMS AND INTERESTS

A.      **Disallowance of Claims.** Pursuant to Bankruptcy Code §§ 105 and 502(d), no distributions will be made with respect to Claims that are Disputed or to Claimants from which property is recoverable under Bankruptcy Code §§ 542, 543, 550, 553, 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) until such time as such objection or Rights of Action against that Claimant have been settled or resolved by a Final Order. As soon as practicable after the date on which a Claim that is Disputed becomes Allowed, the Holder of such newly Allowed Claim will receive all distributions to which it is entitled under the Plan.

B.      **No Distribution Pending Allowance**. Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any Disputed Claim unless and until

such Disputed Claim becomes an Allowed Claim. Any person who holds both an Allowed Claim and a Claim that is Disputed will receive the appropriate distribution on the Allowed Claim, but will not receive a distribution on the Claim that is Disputed.

**C.     Allowance of Claims**. Except as expressly provided for in the Plan or the PSA, for example with respect to the Allowed Parent Claims, no Claim shall be deemed Allowed by virtue of the Plan, Confirmation Order, or any order of the Bankruptcy Court in these Chapter 11 Cases, unless and until such Claim is Allowed.

**D.     Late Claims**. Any Claim filed after any applicable Bar Date shall be unenforceable unless the Claimant has been granted an extension of time to file a Claim by the Bankruptcy Court, and such entity shall not be treated as a creditor or Claimant for the purposes of voting or distributions with respect to the Plan. Unless otherwise expressly ordered by the Bankruptcy Court, any such late-filed Claim shall not be entered on the official claims register, shall be deemed Disallowed and expunged, and the Claimant shall receive no distribution under the Plan or from the Debtor, or Reorganized Debtor.

**E.     Estimation of Claims**. The Debtors or Reorganized Debtors may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated General Unsecured Claim pursuant to Bankruptcy Code § 502(c) regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.

**F.     Cumulative Remedies**. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved as provided herein or by any mechanism approved by the Bankruptcy Court. Until such time as a Claim becomes Allowed, such Claim shall be treated as Disputed for purposes related to allocations and distributions.

XI.

<strong>EFFECT OF THE PLAN ON CLAIMS,<br>INTERESTS, AND RIGHTS OF ACTION</strong>

**A.     Binding Effect**. On and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against the Debtors who held such Claim at any time during the Chapter 11 Cases and its respective successors and assigns, whether or not the Claim of such Holder is Impaired under the Plan and whether or not such Holder has been deemed to accept the Plan.

**B.     Vesting of Assets**. Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estates (including Rights of Action, but excluding

property that has been abandoned pursuant to an order of the Bankruptcy Court, if any) shall vest in the Reorganized Debtors free and clear of all Claims, liens, charges, interests, and encumbrances. As of and following the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire, and dispose of property and settle and compromise Claims, Interests, or Rights of Action without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.

      **C.**    **Authority to Effectuate Plan**. Upon the entry of the Confirmation Order by the Bankruptcy Court (but subject to the occurrence of the Effective Date), and except as may otherwise be provided herein, any treatment or actions provided for or contemplated under the Plan shall be deemed to be authorized and approved without any further order or approval of the Bankruptcy Court. The Debtors shall be authorized, without further application to or order of the Bankruptcy Court but subject to the terms of the Plan to take whatever action is necessary or proper to consummate and carry out the Plan, to consummate any transaction provided for herein, and to effectuate the distributions provided for hereunder.

      **D.**    **Discharge**. In the event this Plan is confirmed under Bankruptcy Code § 1191(a), as of the Effective Date the Debtors will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in Bankruptcy Code § 1141(d)(1)(A), except that the Debtors will not be discharged of any debt imposed by this Plan.

      In the event this Plan is confirmed under section 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan unless the Bankruptcy Court grants a discharge on completion of all payments due under this Plan, or as otherwise provided in Bankruptcy Code § 1192.

## XII.

## EXCULPATION, INJUNCTION, RELEASES, AND RELATED PROVISIONS

      **A.**    **Exculpation**. The Exculpated Parties shall not have any liability to any Holder of a Claim or Interest for any claims arising before, on, or after the Petition Date and prior to or on the Effective Date for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, the pursuit of confirmation of the Plan and the PSA, the consummation of the Plan and the PSA, or the administration of the Plan and the PSA or the property to be distributed under the Plan or the PSA, except for willful misconduct or gross negligence. In all respects, the Exculpated Parties are entitled to rely on the advice of counsel with respect to their duties and responsibilities under the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, discharges, and any other applicable law, Bankruptcy Court order, or rules protecting such Persons from liability.

      **B.**    **Releases by the Debtors**. Except as otherwise provided herein, as of the Effective Date, for good and valuable consideration, each of the Non Debtor Released Parties are deemed released and discharged by the Debtors and their Estates from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or

unforeseen, arising in law, equity, or otherwise that the Debtors or their Estates would have been legally entitled to assert in their own right or on behalf of the holder of any Claim or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the Plan, the PSA, the negotiation, formulation or preparation of the Plan, the PSA, or related agreements, instruments, or other documents in connection with the transactions contemplated under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided that nothing in the Plan, including this paragraph, shall release (i) any obligations under the Plan or the PSA; or (ii) any acts constituting willful misconduct, gross negligence, intentional fraud or criminal conduct as determined by a Final Order ("**Debtors' Release**").

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtors' Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties (b) in the best interests of the Debtors and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; and (d) given and made after due notice and opportunity for hearing.**

**C.    RELEASES BY HOLDERS OF CLAIMS, THIRD PARTY RELEASE.AS OF THE EFFECTIVE DATE, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, THE RELEASING PARTIES ARE DEEMED TO HAVE RELEASED THE RELEASED PARTIES FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, RIGHTS OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED OR ASSERTABLE ON BEHALF OF THE DEBTORS OR THEIR ESTATES, AS APPLICABLE, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR UNASSERTED, ACCRUED OR UNACCRUED, MATURED OR UNMATURED, DETERMINED OR DETERMINABLE, DISPUTED OR UNDISPUTED, LIQUIDATED OR UNLIQUIDATED, OR DUE OR TO BECOME DUE, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT SUCH RELEASING PARTY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' RESTRUCTURING, THE CHAPTER 11 CASES, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASES, THE PSA, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, PSA, THE CONFIRMATION ORDER, AND RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE ON AND BEFORE THE EFFECTIVE DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A RELEASED PARTY THAT CONSTITUTES FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE. NOTWITHSTANDING ANYTHING TO**

#10423533 v3 \018600 \0037

THE CONTRARY IN THE FOREGOING, THE THIRD PARTY RELEASE SHALL NOT RELEASE ANY OBLIGATIONS OF ANY PARTY UNDER THE PLAN OR ANY OTHER DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE THIRD PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD PARTY RELEASE IS: (A) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (B) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; IS (C) FAIR, EQUITABLE, AND REASONABLE; AND (D) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING.

> THE BALLOT PROVIDED TO ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THIS PLAN CONTAINS A BOX THAT IF CHECKED WILL MEAN THAT THE HOLDER OF THE CLAIM HAS OPTED OUT OF GIVING THIS THIRD PARTY RELEASE. OPTING OUT WILL NOT AFFECT THE HOLDER'S DISTRIBUTION UNDER THE PLAN.

Notwithstanding anything contained in this Plan, none of the Debtors, the Debtors-in-Possession, or the Reorganized Debtors are released from or discharged of the Parent Obligations.

D.    INJUNCTION. GENERALLY, EXCEPT AS PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, AS OF THE CONFIRMATION DATE, ALL ENTITIES THAT HAVE HELD, CURRENTLY HOLD, OR MAY HOLD A CLAIM THAT IS UNCLASSIFIED BY THE PLAN OR THAT IS CLASSIFIED BY ARTICLE V OF THE PLAN OR THAT IS SUBJECT TO A DISTRIBUTION UNDER THE PLAN, OR AN INTEREST OR OTHER RIGHT OF AN EQUITY HOLDER, ARE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF ANY SUCH CLAIMS OR INTERESTS OR RIGHTS: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING AGAINST ANY PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST ANY PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST ANY PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; AND (IV) COMMENCING OR CONTINUING ANY ACTION, IN ANY MANNER, IN ANY PLACE, THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN OR THE BANKRUPTCY CODE.  Nothing in this Plan: (i) extinguishes, prohibits, or otherwise limits the right of any Holder of a Claim to assert a right to setoff or recoupment arising in connection with that

Claim as part of the resolution and treatment of that Claim under the Plan; (ii) extinguishes, prohibits, or otherwise limits the right of the Estates or Reorganized Debtors to assert and prevail on any Right of Action; (iii) enjoins or otherwise precludes any party-in-interest from enforcing the terms of the Plan and the Confirmation Order.

**FOLLOWING THE EFFECTIVE DATE, THESE INJUNCTIONS SHALL REMAIN PERMANENTLY IN FULL FORCE AND EFFECT.**

**E.      Preservation and Application of Insurance**. The provisions of this Plan shall not diminish or impair in any manner the enforceability of coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtors, any directors, trustees, or officers of the Debtors, or any other Person, including, without limitation, insurance for the Debtors' directors and officers.

**F.      Retention, Reservation, and Prosecution of Rights of Action**. Except as otherwise provided in the Plan, all Rights of Action are retained and reserved for the Reorganized Debtors, which are designated as the Estates' representatives under Bankruptcy Code § 1123(b)(3)(B) for purposes of the Rights of Action. The Reorganized Debtors shall have the sole authority to prosecute, defend, compromise, settle, and otherwise deal with any Rights of Action, and do so in their capacity as a representatives of the Estates in accordance with Bankruptcy Code § 1123(b)(3)(B). The Reorganized Debtors shall have sole discretion to determine in their business judgment which Rights of Action to pursue, which to settle, and the terms and conditions of those settlements. In pursuing any claim, cause, or Right of Action, the Reorganized Debtors shall be entitled to the extensions provided under section 108 of the Bankruptcy Code. Except as otherwise provided in the Plan, all Rights of Action shall survive confirmation and the commencement or prosecution of Rights of Action shall not be barred or limited by any estoppel, whether judicial, equitable, or otherwise.

**XIII.**

**CONDITIONS TO OCCURRENCE OF EFFECTIVE DATE**

**A.      Conditions to Effectiveness**. The Effective Date does not occur unless and until:

1.      The Confirmation Date occurs and the Confirmation Order has become a Final Order;

2.      The PSA has been executed by Parent; and

3.      All instruments and agreements to be issued, entered into, delivered, or filed under the Plan are issued, entered into, delivered, or filed and are effective.

#10423533 v3 \018600 \0037

**B.**     **Waiver of Conditions**. The Debtors may waive any condition to confirmation or the Effective Date, in whole or in part, at any time without notice, an order of the Bankruptcy Court, or any further action other than that identified in Article XIII, Section A.1.

**C.**     **Effect of Non-Occurrence of the Effective Date**. If the Effective Date does not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against the Debtors; or (b) constitute an admission, acknowledgement, offer, or undertaking by the Debtors. In the event that one or more of the conditions specified in herein shall not have occurred or otherwise not have been waived, (a) the Confirmation Order shall be vacated, (b) the Debtors and all Holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Order were never entered, and (c) the Debtors' obligations with respect to Claims and Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtors or any other Person or prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

## XIV.

## <u>RETENTION OF JURISDICTION</u>

The Bankruptcy Court shall retain and have subject matter jurisdiction over any matter arising under the Bankruptcy Code, or arising in, out of, or related to this Chapter 11 Case and the Plan, including jurisdiction to:

**A**.     Resolve any matters related to Executory Contracts and Unexpired Leases, including: (i) the assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear and determine the allowance of Claims resulting therefrom including the amount of Cure, if any, required to be paid; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (iii) any dispute regarding whether a contract or lease is or was executory or expired;

**B.**     Adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases, this Plan, or that were the subject of proceedings before the Bankruptcy Court, prior to the Effective Date, proceedings to adjudicate the allowance of Disputed Claims, and all controversies and issues arising from or relating to any of the foregoing;

**C**.     Ensure that Distributions to Holders of Allowed Claims are accomplished as provided under this Plan and adjudicate any and all disputes arising from or relating to Distributions under the Plan;

**D.**     Hear and determine or resolve any and all matters related to Rights of Action;

**E.**     Enter and implement any orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified, and/or vacated;

**F.**     Issue and implement orders in aid of execution, implementation, or consummation of this Plan and all contracts, instruments, releases, transactions, and other agreements or documents created in connection with the Plan to the extent authorized by Bankruptcy Code § 1142, including, but not limited to, orders interpreting, enforcing, or clarifying the provisions thereof;

**G.**     Consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

**H.**     Hear and determine all applications for allowance of compensation and reimbursement of Professional Fee Claims under this Plan or under sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code; determine requests for the payment of Claims entitled to priority under section 507(a)(1) of the Bankruptcy Code, including compensation and reimbursement of expenses of parties entitled thereto; adjudicate, decide, or resolve any and all matters related to sections 1192 and/or 1141 of the Bankruptcy Code;

**I.**     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with this Plan and disputes arising in connection with any Person or entity's obligations incurred in connection with the Plan;

**J.**     Hear and determine all suits or adversary proceedings to recover assets of the Debtors and property of their Estates, wherever located;

**K.**     Hear and determine any timely objections to Claims, both before and after the Effective Date, including any objections to the classification of any Claim, and to allow, disallow, determine, liquidate, classify, estimate, or establish the priority of, or secured or unsecured status of any Claim, in whole or in part;

**L.**     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

**M.**     Grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, or in the event that the Effective Date does not occur, to consider any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4);

**N.**     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with the consummation or enforcement of the Plan;

**O.**     Enforce all orders, judgments, and rulings entered in connection with the Chapter 11 Cases and to determine any other matters that may arise in connection with or are related to the Plan and the Confirmation Order;

**P.**     Enforce the permanent injunction created by the Confirmation Order and Article XII hereof;

#10423533 v3 \018600 \0037

35

**Q**      Hear any other matter not inconsistent with the Bankruptcy Code;

**R.**      Hear and determine all disputes involving the existence, nature, or scope of the Debtor's discharge;

**S.**      Issue a final decree and enter an order closing the Chapter 11 Cases; and

**T.**      Nothing contained in this Article shall be construed to increase, decrease, or otherwise modify the independence, sovereignty, or jurisdiction of the Bankruptcy Court.

**XV.**

**MISCELLANEOUS**

**A.      Effecting Documents; Further Transactions; Timing**. The Debtors and Reorganized Debtors are authorized and directed as of the Effective Date, without further order of the Bankruptcy Court, to execute, deliver, file, or record all contracts, instruments, releases, and other agreements or documents, and to take all actions necessary or appropriate to effect and further evidence the terms of the Plan. All transactions required to occur on the Effective Date under the terms of the Plan are deemed to have occurred simultaneously.

**B.      Governing Law**. Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the laws of the State of New York shall govern the rights and obligations arising under the Plan, without giving effect to principles of conflicts of law of New York.

**C.      Continuing Viability of Other Orders or Agreements**. Except to the extent expressly modified by the Plan, all Final Orders previously entered by the Bankruptcy Court shall continue in full force and effect.

**D.      Exemption from Transfer Taxes**. Under Bankruptcy Code § 1146(a): (a) the issuance, distribution, transfer, and exchange of assets or property of the Estates; (b) the execution, assignment, modification, or recording of any lease or sublease; and (c) the execution, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, the Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to, the foregoing are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, or real estate transfer tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents are directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**E.      Post-Effective Date Fees; Final Decree**. Notwithstanding anything to the contrary contained in the Plan, all fees payable through the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid on the Effective Date, or as soon as practicable thereafter. The Reorganized Debtors are responsible for paying any post-Effective Date fees under 28 U.S.C. § 1930(a)(6) and filing post-confirmation reports until the Bankruptcy Court enters a Final Decree, which Reorganized Debtors must seek as soon as feasible after distributions under the Plan have commenced. Notice

of application for a Final Decree need be given only to those holders of Claims and Interests and other parties that, after the Effective Date, specifically request such notice.

**F.** **Modification and Amendments**. The Debtors may alter, amend, or modify this Plan under section 1193(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of this Plan as defined in section 1101(2) of the Bankruptcy Code, the Debtors may under section 1193(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan.

**G.** **Revocation, Withdrawal, or Non-Consummation**. The Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Effective Date, which revocation or withdrawal shall occur upon the Debtors' filing of a notice thereof, and to file subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan, it shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Rights of Action or Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

**H.** **Exhibits and Schedules**. All exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein. In the event of any inconsistency between the Plan and the exhibits and schedules to the Plan or the Plan Supplement, the terms of the Plan shall control.

**I.** **Substantial Consummation**. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101(2) and 1127(b) of the Bankruptcy Code

**J.** **Notices**. After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered on the parties below shall be served as follows:

*If to the Reorganized Debtor:*

S &A Retail, Inc.
S & A Distribution, Inc.
Bridgette Nally, Secretary
334 S Buckhout St.
Irvington, NY 10533

With a copy (which shall not constitute notice) to:

Joseph T. Moldovan, Esq.
David J. Kozlowski, Esq.
Michael Barry, Esq.
MORRISON COHEN LLP
909 Third Avenue
New York, NY 10022
T: 212-735-8600

#10423533 v3 \018600 \0037

F: 212-735-8708
jmoldovan@morrisoncohen.com
dkozlowski@morrisoncohen.com
mbarry@morrisoncohen.com

***If to the U.S. Trustee:***

Office of the United States Trustee
Southern District of New York
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014
T: 212-510-0500
F: 212-668-2256
Attn: Shannon Anne Scott, Esq.

***If to the Subchapter V Trustee:***

Yann Geron, Esq.
Geron Legal Advisors LLC
370 Lexington Avenue, Suite 1101
New York, NY 10017
(646) 560-3224
ygeron@geronlegaladvisors.com

**K.    Entire Agreement**. Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**L.    Severability**. If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the Debtor's consent, and (c) nonseverable and mutually dependent.

**M.    Conflicts**. Except as set forth in the Plan, to the extent that any provision of any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; provided, however,

that if there is a conflict between this Plan and a Plan Supplement document, the Plan Supplement document shall govern and control.

June 24, 2021

Respectfully submitted,

S & A Retail, Inc.
S & A Distribution, Inc.

*/s/ Bridgette Nally*
Bridgette Nally
Secretary

**EXHIBIT 1**

**<u>DEBTOR RETAIL LIQUIDATION ANALYSIS</u>**

**S&A Retail, Inc.**
*Liquidation Analysis*
*Estimated as of Effective Date*

| | Est Liquidation % | S&A Retail, Inc. Book Value | Estimated Liquidation Value | Note |
|---|---|---|---|---|
| Cash | 100% | $ 675,319 | 675,319 | A |
| Accounts Receivable | 0% | - | - | B |
| Inventory | 20% | 242,000 | 48,400 | C |
| FF&E | 5% | 23,792 | 1,190 | D |
| **Estimated Proceeds from Liquidation of Assets** | | **941,111** | **724,909** | |
| | | | | |
| **Administrative Claims** | | | | |
| Accounts Payable Post-Petition | 100% | 40,000 | 40,000 | E |
| Due to Parent | 100% | 240,000 | 240,000 | F |
| Chapter 7 Trustee Fees | 100% | 21,747 | 21,747 | G |
| Chapter 7 Trustee Professional Fees | 100% | 40,000 | 40,000 | G |
| Chapter 11 Professional Fees | 100% | 150,000 | 150,000 | H |
| Winddown Costs | 100% | 25,000 | 25,000 | I |
| **Net Proceeds Available after Administrative Claims** | | | **208,161** | |
| | | | | |
| **Priority Claims** | | | | |
| 503(b)(9) Claims | | | - | J |
| Priority Tax Claims | | | 8,000 | K |
| **Net Proceeds Available to Unsecured Creditors** | | | **200,161** | |
| | | | | |
| Accounts Payable | | $ 875 | 2 | L |
| Outstanding Rents | | 4,145,439 | 8,873 | L |
| Lease Rejection | | 4,150,506 | 8,884 | M |
| Intercompany accounts payable | | 21,332,854 | 45,661 | N |
| Affiliate Loans | | 63,885,281 | 136,741 | N |
| | | 93,514,955 | 200,161 | |
| | | | | |
| **Available for 3rd Party Debt** | | | **$ 17,759** | |
| | | | | |
| **Percentage Return to Unsecured Creditors** | | | **0%** | |
| | | | | |
| **Under the Plan if Consensual** | | | **$ 150,000** | O |
| | | | 2% | |
| | | | | |
| **Under the Plan if Non-Consensual** | | | **$ 100,000** | O |
| | | | 1% | |

A.  Cash and Cash Equivalents - The cash balances are estimated as of the effective date
B.  Accounts Receivable - S & A Retail's sales are primarily direct from customers via credit card and thus have no receivables
C.  Inventory - Net inventory consists of estimated book value as of the effective date
D.  Fixed Assets -A minimal recovery has been provided since most of the fixed assets are leasehold improvements and store fixtures.
E.  Estimated accounts payable
F.  Represents post-petition amounts due to parent related to inventory purchases.
G.  Trustee Expenses - A recovery estimate of 3% of gross proceeds is assumed for trustee fees and trustee professional amount is estimated.
H.  Estimated unpaid administrative professional fees
I.  Winddown/Employee Costs- represents estimated expenses to liquidate remaining stores.
J.  503(b)9 claims represent inventory supplied by parent
K.  Priority Tax Claims - represents estimated corporate income taxes and unpaid sales taxes
L.  General Unsecured Claims - Represents accounts payable and estimated lease rejection damages.
M.  Estimated lease rejection claims for 34th Street and Aventura stores
N.  Represents S&A Distribution's guarantee of lease for rent owed under S & A Retail's Aventura Lease

**EXHIBIT 2**

S&A Distribution, Inc.
*Liquidation Analysis*
*Estimated as of Effective Date*

**DEBTOR DISTRIBUTION**

## LIQUIDATION ANALYSIS

| | Est Liquidation % | S&A Distribution, Inc. Book Value | Estimated Liquidation Value | Note |
|---|---|---|---|---|
| Cash | 100% | $ 227,130 | 227,130 | A |
| Accounts Receivable | 90% | 2,922,150 | 2,629,935 | B |
| Accounts Receivable - Affiliate | 100% | 240,000 | 240,000 | C |
| Inventory | 20% | 5,124,463 | 1,024,893 | D |
| FF&E | 5% | 91,905 | 4,595 | E |
| Other Assets | 5% | 367,326 | 18,366 | F |
| Other - Potential Causes of Action | Est. | 325,000 | 325,000 | G |
| **Estimated Proceeds from Liquidation of Assets** | | 9,297,974 | 4,469,919 | |
| | | | | |
| **Administrative Claims** | | | | |
| Accounts Payable Post-Petition | 100% | 406,000 | 406,000 | H |
| Due to Affiliate- Inventory | 100% | 305,000 | 305,000 | I |
| Chapter 7 Trustee Fees | 100% | 134,098 | 134,098 | J |
| Chapter 7 Trustee Professional Fees | 100% | 150,000 | 150,000 | J |
| Chapter 11 Professional Fees | 100% | 105,000 | 105,000 | K |
| Winddown Costs | 100% | 75,000 | 75,000 | L |
| Employee Costs | 100% | 25,000 | 25,000 | L |
| **Net Proceeds Available after Administrative Claims** | | | 3,269,822 | |
| | | | | |
| **Priority Claims** | | | | |
| 503(b)(9) Claims | | | 376,873 | M |
| Priority Tax Claims | | | 750 | N |
| **Net Proceeds Available to Unsecured Creditors** | | | 3,269,072 | |
| | | | | |
| Accounts Payable | | $ 26,625 | 3,447 | O |
| Lease Guarantee | | 1,228,062 | 158,999 | P |
| Affiliate Loans | | 23,994,716 | 3,106,626 | Q |
| | | 25,249,403 | 3,269,072 | |
| | | | | |
| **Available for 3rd Party Debt** | | $ | 162,446 | |
| | | | | |
| **Percentage Return to Unsecured Creditors** | | | 13% | |
| | | | | |
| **Under the Plan if Consensual** | With Multiplier | 25% | $ 203,057 | R |
| | | | 16% | |
| | | | | |
| **Under the Plan if Non-Consensual** | With Multiplier | 10% | $ 178,690 | R |
| | | | 14% | |

A. Cash and Cash Equivalents - The cash balances are estimated as of the effective date
B. Accounts Receivable - Represents primarily wholesale accounts and is estimated to be 90% collectable as a number of receivables are insured.
C. Accounts Receivable Affiliate- Represents amounts receivable from S&A Retail and S&A Canada. Potential recoveries from S&A Canada's bankruptcy proceeding are assumed to be collected and used for working capital
D. Inventory - Net inventory consists of book value as of the filing date
E. Fixed Assets - A minimal recovery has been provided since most of the fixed assets are leasehold improvements and store fixtures.
F. Other - Includes Duty Drawback accrual and intangible assets
G. Other - Potential Causes of Action- Estimated recoveries from avoidance actions
H. Estimated accounts payable
I. Represents post-petition amounts due to parent related to inventory purchases.
J. Trustee Expenses - A recovery estimate of 3% of gross proceeds is assumed for trustee fees and trustee professional amount is estimated.
K. Estimated unpaid administrative professional fees
L. Winddown/Employee Costs- represents estimated expenses to liquidate remaining assets.
M. 503(b)9 claims represent inventory supplied by parent
N. Priority Tax Claims- represents estimated corporate income taxes.
O. General Unsecured Claims- Represents amounts accounts payable.
P. Represents S&A Distribution's guarantee of lease for rent owed under S & A Retail's Aventura Lease
Q. Represents loans from affiliates
R. Excludes related party recoveries

# EXHIBIT 3

## DEBTOR RETAIL DISPOSABLE INCOME ANALYSIS

S&A Retail, Inc.

| (000's) | 2021 | 2022 | 2023 | YR 4 | YR 5 |
|---|---|---|---|---|---|
| Total Revenue | 3,068 | 3,673 | 4,474 | 4,608 | 4,746 |
| Total Cost of Goods | 986 | 1,181 | 1,428 | 1,471 | 1,515 |
| Expenses | | | | | |
| Selling and Distribution | 1,536 | 1,944 | 2,371 | 2,442 | 2,515 |
| Personnel Costs | 140 | 140 | 140 | 140 | 140 |
| Structure Costs * | 55 | 65 | 75 | 75 | 75 |
| Other | 26 | 29 | 34 | 34 | 34 |
| Total Expenses | 1,757 | 2,178 | 2,620 | 2,691 | 2,764 |
| Samples | - | - | - | - | - |
| Corporate Personnel | 308 | 326 | 363 | 363 | 363 |
| Structure Costs * | 204 | 201 | 219 | 219 | 219 |
| Logistic Costs | 294 | 284 | 324 | 324 | 324 |
| Marketing Expenses | 81 | 84 | 92 | 92 | 92 |
| Amort. & Depreciation | 11 | 6 | 2 | 2 | 2 |
| | 897 | 901 | 1,000 | 1,000 | 1,000 |
| Disposable Income | (572) | (587) | (574) | (554) | (533 |

* Structure costs consist of bank fees, car park costs, consulting fees, consumption material, insurances, maintenance, administrative costs, taxes, transport costs, outsourcing services, telecommunications costs, trade fairs and showroom costs, travelling expenses, utilities and the cost of Channel Key (Amazon marketplace).

## EXHIBIT 4

### <u>DEBTOR DISTRIBUTION DISPOSABLE INCOME ANALYSIS</u>

S&A Distribution, Inc.

| (000's) | YR1 | YR 2 | YR 3 | YR 4 | YR 5 |
|---|---|---|---|---|---|
| Total Revenue | 6,707 | 7,615 | 8,541 | 8,797 | 9,061 |
| Total Cost of Goods | 4,572 | 5,078 | 5,639 | 5,808 | 5,982 |
| Expenses | | | | | |
| Selling and Distribution | 1,058 | 1,178 | 1,241 | 1,278 | 1,317 |
| Personnel Costs | 148 | 148 | 148 | 148 | 148 |
| Structure Costs * | 60 | 128 | 133 | 133 | 133 |
| Other | 279 | 301 | 327 | 327 | 327 |
| Total Expenses | 1,545 | 1,755 | 1,849 | 1,886 | 1,925 |
| Samples | 312 | 328 | 332 | 332 | 332 |
| Corporate Personnel | 674 | 675 | 694 | 694 | 694 |
| Structure Costs * | 445 | 417 | 418 | 418 | 418 |
| Logistic Costs | 642 | 588 | 619 | 619 | 619 |
| Marketing Expenses | 177 | 174 | 175 | 175 | 175 |
| Amort. & Depreciation | 23 | 13 | 4 | 4 | 4 |
| | 2,273 | 2,196 | 2,242 | 2,242 | 2,242 |
| Disposable Income | (1,683) | (1,414) | (1,189) | (1,139) | (1,087) |

* Structure costs consist of bank fees, car park costs, consulting fees, consumption material, insurances, maintenance, administrative costs, taxes, transport costs, outsourcing services, telecommunications costs, trade fairs and showroom costs, travelling expenses, utilities and the cost of Channel Key (Amazon marketplace).

**EXHIBIT 5**

**PLAN SUPPORT AGREEMENT**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 21-22174 (RDD)) |
| **S & A RETAIL, INC.,** *et. al.,* | (Subchapter V) |
| Debtors. | |

**PLAN SUPPORT AGREEMENT**[1]

This Conditional Plan Support Agreement is entered into by and between S &A Retail, Inc., and S & A Distribution, Inc., the above-captioned Debtors and Debtors-in-Possession, and Parent. Debtors and Parent are collectively referred to in this PSA as the "**Parties**" and individually as a "**Party**." In consideration of the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged, and in order to formally document the conditional commitment to the Plan from Parent, the Parties agree as follows:

1.      On the Petition Date, the Debtors filed voluntary petitions under subchapter V of Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

2.      On April 26, 2021, the Debtor filed its Plan.

3.      Parent holds a general unsecured claim in the amount of $22,816,767 against Debtor Distribution.

4.      Parent holds a claim entitled to administrative priority status under Section 503(b)(9) of the Bankruptcy Code against Debtor Distribution in the amount of $376,873.

5.      Parent and the Debtors are parties to various Debtor Affiliate Agreements.

6.      Parent holds an Administrative Claim and a Cure Claim arising under the Debtor Affiliate Agreements against Debtor Distribution in the amount of $24,000.

7.      Parent will provide the Debtor sufficient funds:

---

[1] All terms not otherwise defined in this Agreement are as defined in the Plan.

#10423533 v3 \018600 \0037

1

a.      in the event that the Plan is confirmed consensually, to provide a recovery in excess of Liquidation Value of $150,000 to fund distributions to Class 2, and a recovery in excess of Liquidation Value of $203,057 (which is a 1.25 multiple of Liquidation Value) to Class 2A Allowed Claims; or

b.      in the event the Plan is not confirmed consensually, to provide a recovery in excess of Liquidation Value of $100,000 to fund distributions to Class 2,  and a recovery in excess of Liquidation Value of $ 178,690 (which is a 1.10 multiple of Liquidation Value) to Class 2A Allowed Claims; and

c.      to pay all Allowed (i) Class 1 and Class 1A Priority, (ii) Administrative, and (iii) Cure Claims in full.

The Funding Commitment Agreement will be filed with the Court as part of the Plan Supplement.

8.      This PSA shall become effective and binding only in the event that Bankruptcy Court enters an order approving the Plan.

9.      Provided this PSA becomes effective and binding as provided above, Parent agrees to support and be bound by the Plan.

10.     The Parent Claims are Allowed in full. Parent is not required to file any proof of claim or other evidence of the Parent Claims in this Chapter 11 Case.

11.     All Debtor Affiliate Agreements between and among the Debtors and Parent are assumed under the Plan.

12.     Parent agrees to that any Administrative or Cure Claims arising under the Debtor Affiliate Agreements, will not be paid under the Plan, but will be paid as agreed between Parent and the Reorganized Debtors after the Effective Date.

13.     Parent waives any and all distributions under the Plan on account of its Unsecured Claims, except that Parent shall be permitted to allocate any Unsecured or Administrative Claim amounts as it deems necessary in its sole and absolute discretion to comply with any cross border taxation and transfer pricing issues and to remain in compliance with U.S. and Italian tax regulations including the taxation treaty between the United States and Italy and all transfer pricing rules, applicable for tax purposes to transactions between associated companies in accordance with tax regulations and the Convention.

14.     Parent agrees to take all necessary and appropriate actions to effectuate its support of the Plan, including but not limited to: (i) execute and deliver any and all necessary and appropriate documentation to affirm its support of the Plan and to effectuate payment of the Funding Commitment, (ii) use its best efforts to take any and all necessary, appropriate actions in furtherance of this PSA, as promptly as practicable, at least within the time frames contemplated by this PSA, including supporting the confirmation of the Plan, entry

of the Confirmation Order, entry of final decree; and supporting (and not objecting to) any ancillary motions or applications to effectuate the Plan.

15.     This PSA may not be modified, amended, or supplemented except in a writing signed by the Parties.

16.     Each Party hereby represents, warrants, and covenants that it has made its own decision to execute this PSA based upon its own independent assessment of documents and information available to it, as it has deemed appropriate, and that each Party has all requisite corporate or other applicable entity power and authority to enter into this Agreement.

17.     The Parties acknowledge that the Bankruptcy Court shall retain jurisdiction to resolve all disputes relating to this Agreement and that the laws of the State of New York shall apply.

Dated: June 23, 2021


S & A Retail, Inc.                              Geox S.p.A.
S & A Distribution, Inc.


*/s/ Bridgette Nally*                           s/_____
Bridgette Nally                                 Livio Libralesso
Secretary                                       CEO
S &A Retail, Inc.
S & A Distribution, Inc.
Bridgette Nally, Secretary
334 S Buckhout St.
Irvington, NY 10533


#10423533 v3 \018600 \0037

3